THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ALTON MILLER, Defendant-Appellant.

(Nos. 53756, 53757, 53758, 53759 cons.;

First District—January 27, 1971.

*Rehearing denied February 24, 1971.*

Gerald W. Getty, Public Defender, of Chicago, (James N. Gramenos, Assistant Public Defender, of counsel,) for appellant.

Edward V. Hanrahan, State's Attorney, of Chicago, (Robert A. Novelle and Paul P. Biebel, Jr., Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE DIERINGER delivered the opinion of the court:

This is an appeal from the Circuit Court of Cook County wherein the defendant, Alton Miller, was convicted after a bench trial for unlawful possesion of narcotics. He was sentenced to fifteen to twenty-five years in the Illinois State Penitentiary. Following the trial, defendant then pleaded guilty to three indictments for the sale of narcotics and was sentenced to fifteen to twenty-five years on each indictment, the four sentences to run concurrently. He appeals all four convictions, which are consolidated herein.

Defendant complains on this appeal that the court erred in failing to hold a hearing on a motion for substitution of judges herein upon an allegation of prejudice of the judge, and also by failing to grant a continuance in the multi-indictment situation. The State had elected to proceed on one indictment at a later date and subsequently changed its election and asked to proceed forthwith on another indictment, and further that the trial judge, having granted the first continuance, changed the order and forced the trial immediately, thereby erring. Defendant also complains of the use of hearsay statements, of the illegal search of defendant's hotel room, of the conviction and possession of narcotics where the narcotics tinfoil package was found in the pocket of a woman's dress in the hotel room closet when the defendant denies possession of the room. Defendant further complains of the court accepting guilty pleas in the last three separate indictments for the sale of narcotics prior to sentencing in the case of possession of narcotics.

Policeman Theodore Nadill testified he was with the Chicago Police

Department for four years and assigned to the 11th District vice and narcotics investigations. On March 25, 1964, at about 10:30 P.M., he was working with Officers Thomas Simpson and Andrew Craig, at which time he spoke with a police informant. The officers then went to the Hoover Hotel at 3356 West Jackson Boulevard in Chicago, accompanied by the police informant. Upon arriving at the hotel the three officers went into the hotel lobby, and Officer Nadill spoke with the desk clerk. As they were leaving they saw defendant, Alton Miller, and spoke to him in the lobby of the hotel. All of the officers spoke to the defendant, asking him questions, which the defendant answered. Officer Nadill stated that to the best of his recollection he asked the defendant if he had been active recently in selling narcotics, to which defendant replied, "No," that he was "out of the box." Defendant denied selling narcotics out of the hotel and told the police, "Come upstairs and look all you want. You won't find nothing." The police proceeded to hotel room 421, and Officer Nadill testified that Miller opened the door with a key and the four entered the room, which consisted of one room with a bathroom. Officer Nadill further testified that while in the room he told the defendant, "We are going to search the room," to which defendant replied, "Go ahead, I told you you won't find nothing here." Officer Nadill testified that in the closet of the room they found a tinfoil package and a hypodermic needle, along with a syringe in a brown package, in the pocket of a woman's dress in a closet. Officer Nadill further testified that while Officer Craig was making the "field test," defendant said the items were "for my own use." Officer Nadill said defendant refused to tell them who the clothes belonged to, and that upon leaving the room they proceeded to a utility closet approximately thirty feet from the hotel room, which closet opens into the hallway and services the whole fourth floor of the hotel. A search of that service closet revealed another syringe and hypodermic needle along with a plastic vial which contained crushed green plant and a tinfoil package containing white powder, bearing the name "Lucille Miller." The officers took the defendant to the 11th District police station, where he was "processed."

Officer Nadill said he spoke privately to the hotel clerk in the hotel, behind double doors, and the hotel clerk identified the defendant. Officer Nadill testified he looked at the room registration for room 421 and could not recall the name he observed but was sure it was not the name of Alton Miller, although the hotel clerk had told the policemen in a private conversation that it was the defendant who occupied the room. The officer testified his investigation revealed there was more than one person occupying room 421. He didn't make any notes or written memorandum of his conversation with either the defendant or the hotel clerk,

and could not recall any information about the registration, or whether it was a male or female name, but said it could have been a female and that he found female clothing in room 421. The officer stated his information came from the investigation, but they did not secure an arrest warrant or search warrant, and after arresting the defendant the hotel room was not kept under surveillance. Officer Simpson testified to substantially the same effect, and Officer Craig did likewise. He also added that the defendant denied any knowledge of the materials and narcotics found in the clothes closet in the fourth floor hallway, and there were about twenty to thirty apartments located on the fourth floor. The hall closet was open, and anyone had access to the space.

It was stipulated that Charles Vondrak, a chemist in the Chicago Police Department, if called as a witness, would testify that the narcotics were commonly known as heroin and marijuana, and it was further stipulated that defendant was thirty-four years of age.

The defendant, Alton Miller, testified that he lived at 1251 South St. Louis Avenue and resided at this address on March 25, 1964, the day he was arrested. He denied living in the Hoover Hotel in room 421 but said he knew a girl who lived there. He also denied having a key and said that the officers had the key and opened the door. Upon entering the room, defendant observed the room was all torn up and appeared to have been searched. He said he denied knowledge of the narcotics and never said they were for his own use or that he ever sold narcotics at the Hoover Hotel. He said upon arriving in room 421 with the police, several policemen were inside waiting. In the room the police looked at the money defendant had in his possession and looked at his personal papers and returned them. When they had defendant's money, they compared defendant's money with a list and then returned the money to defendant. They asked him if he sold narcotics, and he said he didn't. He said the officer stripped him of his clothing and beat him, trying to have him admit to having narcotics. He said it was Officer Nadill, also known as Officer Gypsy, who slapped him while Officer Craig did most of the beating. Officer Simpson did not hit or touch the defendant. Defendant said he knew a woman "Loretta" in room 421 and had visited with her in the past three or four weeks, and each time she was alone. He said he did not place any tinfoil package in the lady's dress nor did he place any tinfoil package in the hall closet. He denied the police showed him any tinfoil package in room 421, nor did he see anything being found in room 421. The State introduced a prior conviction dated in the year 1952 and rested its case, whereupon the court entered a finding of guilty.

The court addressed defendant and defense counsel, inquiring whether

or not the defendant was a user of narcotics. Defense counsel responded that defendant was an addict and a user of narcotics. Prior to sentencing the defense attorney withdrew the pending not guilty pleas of the remaining three indictments, charging defendant with the unlawful sale of narcotics, and stipulated the charges in the indictments were true and correct, and no evidence or facts relevant to these charges were presented. It was further stipulated defendant was thirty-four years of age. The State introduced the prior record of conviction in the year 1948 of 90 days in the House of Correction and three years' probation, and in 1952 a conviction for the sale of narcotics with a five year sentence. Thereupon the trial court sentenced the defendant to a term of fifteen to twenty-five years on each of the four indictments, to be served concurrently.

On July 27, 1964, this cause was assigned to Judge Alfonse Wells and continued to September 24, 1964. Counsel filed his appearance on July 27, 1964. On September 24, 1964, the defendant and his attorney appeared before Judge Wells, asking for a continuance and requesting that the State be required to elect which indictment it would proceed upon when the case went to trial. No subpoenas had been issued for September 24, 1964, and the defendant's attorney asked for a 60-day continuance. The State had no objection and stated, "Well, our officers are in court, Judge. However, it now turns out we have some problems, so if the Court wishes to continue the case—." The court stated he did not object to a continuance, but 60 days was a long continuance, and he would like to move on the four indictments. The court inquired if it would be a bench trial, and counsel for defendant said it would, and the court set the date as October 22nd. The State then elected to proceed on indictment 64—2277, which is a sale, and the court said, "For the record, the case will be continued, motion of defendant, to October 22, 1964, by representation made it will possibly be a bench trial and the State is indicating they would proceed first on Indictment No. 64-2277. O.K." The defense counsel said, "All right. Thank you, Judge." Following this continuance on September 24th, a second prosecutor appeared later in the day and demanded that the case proceed immediately on indictment No. 64-2278, stating it would be impossible for the State to be ready on all indictments at once. When the trial court suggested proceeding with the State's elected 64-2277, the assistant State's Attorney interjected their present inability to be ready on that indictment but desired instead to proceed on indictment No. 64-2278. The trial court thereupon ordered the trial to proceed immediately on indictment No. 64-2278, charging appellant with unlawful possession of narcotics. Coun-

sel for defendant then requested a substitution of judges from Judge Wells in the form of an oral motion, saying he would present a written petition the following day. The court advised he would consider the oral motion with the understanding that a written petition be filed the following day, and thereupon denied the motion without a hearing of any kind. Defense counsel did not file a written motion, the case having been forced to trial immediately. Defense attorney had advised the court that defendant was asking for a change of venue because he felt he could not receive a fair trial from Judge Wells.

■■ We have examined this record carefully and feel the defendant and his counsel were forced into an untenable position of having to go to trial after the case had been continued in the morning by one assistant State's Attorney only to have another assistant State's Attorney appear later in the day demanding an immediate trial. There were four indictments in this case which defense attorney had to defend, and he was entitled to know which one he was going to try first. We think it most unfair for the State to make such demands and for the court to accede to them. In *People v. Hambleton*, 399 Ill. 388 (1948), our Illinois Supreme Court said:

"A defendant in every criminal case is entitled, under the law, to a reasonable time and full opportunity to prepare for his trial, and that right is one guaranteed to him by the constitution. * * * Innocent or guilty, or whatever his position might be, he is entitled to sufficient time to prepare his defense. There is not one law for an innocent man and another for a guilty man."

Also quoted in *People v. McNeil*, (1968) 102 Ill.App.2d 257. It is understandable why the defendant would ask for a change of venue under such circumstances. We recognize the trial court wanted to move the four indictments as quickly as possible, but the same should not be done in such a manner as to deny the defendant and his attorney a fair opportunity to prepare his defense and if necessary to ask for a substitution of judges. *People v. Kostos* (1961), 21 Ill.2d 451; *People v. Lagardo* (1967), 82 Ill.App.2d 119.

■■ On the trial the court allowed the police to testify to hearsay information obtained from the hotel clerk. No reason was given for not bringing in the hotel clerk to identify the defendant or the records of the hotel to ascertain to whom the room was rented. This was error. (*People v. Wright* (1965), 65 Ill.App.2d 23.) Certainly the admission of evidence to the effect there were narcotics in the service closet at the end of the hallway open to anybody and in no way connected to this defendant was error and highly prejudicial to the defendant's case. No

effort was made to connect the dress containing the narcotics with the owner thereof, nor was the defendant's statement of his residence checked out by the police.

■■ Defendant contends on this appeal that he pleaded guilty to the remaining three indictments for the sale of narcotics in the hope it would soften the sentence about to be imposed on the case where he had just been found guilty of possession of narcotics. On this record we hold defendant did not receive a fair trial and was deprived of due process of law; neither should his pleas of guilty have been accepted under these circumstances. The court did not hear aggravation and mitigation as required by the statute on pleas of guilty (*People v. Smith* (1965), 62 Ill.App.2d 73), but summarily imposed sentences of fifteen to twenty-five years on all four indictments, treating the four as if they were a package.

There are other questions raised, including lack of warrant for arrest and lack of a search warrant, which we find it unnecessary to discuss in view of the holdings we have made herein.

For the reasons stated, we are reversing all four convictions and remanding all four for a new trial.

Reversed and remanded.

ADESKO, P. J., and BURMAN, J., concur.