**The People of the State of Illinois, Plaintiff-Appellee, v. Malcolm Ehrler, Defendant-Appellant.**

**Gen. No. 69–32.**

Second District.

October 20, 1969.

Rehearing denied November 26, 1969.

Harold D. Nagel, of Stockton, for appellant.

William H. Snively, of Rockford, and Eric S. DeMar, State's Attorney, of Galena, for appellee.

MR. JUSTICE SEIDENFELD delivered the opinion of the court.

Malcolm Ehrler, defendant, was convicted of murder after a jury trial and sentenced to serve 25 to 50 years in the penitentiary.

On appeal he claims a right to a new trial because his motion for substitution of judge was refused, and because of alleged trial errors. He also argues that it was reversible error to refuse his motion for a directed verdict by reason of insanity.

The facts, bearing on the initial claim, impel us to find that prejudicial error was committed in the refusal of the motion for substitution of judge.

Defendant first appeared on a complaint before Judge Gundry, the resident associate judge for Jo Daviess County, on July 19th, 1968. He was advised of the nature of the charge and the cause was continued to July 22nd to allow the opportunity to secure an attorney. On July 22nd defendant again appeared before Judge Gundry and claimed indigency, and the cause was continued for investigation to the date of July 23rd. The defendant appeared before Judge Gundry on July 23rd and it was determined that he was indigent and the court appointed counsel to represent him.

An indictment charging defendant with murder in one count and voluntary manslaughter in a second count was returned on July 30th, 1968.

On August 8th, defendant was arraigned before Judge Gundry, and on his counsel's motion the matter was continued without plea until August 15th for the purpose of studying the indictment and the statements furnished to the defendant.

Defendant appeared again before Judge Gundry on August 15th and filed a written motion to dismiss the indictment. Without ruling on the motion and on Judge Gundry's suggestion that a plea be entered, the defendant pleaded not guilty. Judge Gundry thereupon set the case for trial for October 8th, 1968.

On August 29th, pursuant to defendant's notice, he appeared before Judge Gundry and presented a motion for a psychiatric examination and for inspection and dis-

175

covery of certain evidence. Over the State's objections, and upon defendant's waiving extradition, Judge Gundry ordered the examination of defendant in Iowa in the office of a Dr. Piekenbrock. The State then orally moved for a competency hearing, whereupon defendant's counsel advised the court that no question was being raised as to defendant's competence to stand trial, but that the examination requested by defendant was to prepare a defense. The court advised the State's Attorney to file a written motion and stated "we will have a hearing on it and pass on it in due time." The court also ruled on the motion for inspection and discovery at the August 29th hearing.

Thereafter, the State noticed in the defendant to appear before "The Honorable Helen M. Rutkowski, Circuit Judge of said Court, or any other Judge sitting in her stead," on September 18th, 1968. Judge Rutkowski ordered the competency hearing (pursuant to Ill Rev Stats 1967, c 38, § 104–2) for October 7th.

On September 25th, defendant appeared before Judge Rutkowski pursuant to defendant's notice and moved for a substitution of judge other than Judge Rutkowski.[1] The motion was denied for the stated reason that it had not been made within ten days "after the case was assigned to me." The court indicated that it would not hear contrary arguments on the allegation of prejudice because "it has already ruled on a motion which goes to the merits of the case, specifically, a motion for a competency hearing." [2] No order of assignment or rule of practice governing assignment in the circuit is found in the record.

---

[1] In substance the motion alleged that on September 18th, 1968, the defendant became officially aware of the fact that his cause had been placed on the trial call of Judge Rutkowski and that defendant believes that said judge is, or may be, so prejudiced against him that he cannot have a fair and impartial trial. The motion was supported by the sworn affidavit of the defendant.

[2] It appears from the colloquy between the State's Attorney, defendant's counsel and the court that the court assumed that the

176

■ It is the position of the defendant, with which we agree, that the motion for substitution of judge was improperly denied under the provisions of Ill Rev Stats 1967, c 38, § 114–5.[3] On the record, defendant could not be charged with knowledge of the assignment of the case to Judge Rutkowski for trial until September 18th, 1968, and his request seven days later was within the ten-day period.

Nor do we consider that when, on September 18th, upon her first appearance in the case, Judge Rutkowski set the competency hearing over defendant's argument that none was necessary, her order went to the "merits of the case," and precluded a claim of prejudice thereafter.

matter was assigned to her as early as July before she had left on a vacation, pursuant to an understanding that it would be tried in her "term" as trial judge in Jo Daviess County. The State's Attorney stated that this was his understanding of the usual procedure in that county and that because of the vacation of Judge Rutkowski the preliminary matters would be heard by the resident associate judge, although it was "standard operating procedure" to have major felonies heard by a full circuit judge. In this connection the State's Attorney stated, "Now, whether there was a formal setting of that, this is the problem." Defendant's counsel was admittedly not so advised and he stated without contradiction that the first time he had any knowledge that the case was assigned for trial before Judge Rutkowski was on the first appearance of that judge in the case on September 18th.

[3] 114–5. Sec 114–5. Substitution of Judge.) (a) Within 10 days after a cause involving only one defendant has been placed on the trial call of a judge the defendant may move the court in writing for a substitution of judge or any 2 judges on the ground that such judge or judges are so prejudiced against him that he cannot receive a fair trial. Upon the filing of such a motion the court shall proceed no further in the cause but shall transfer it to another court or judge not named in the motion.

. . .

(c) In addition to the provisions of subsection (a) and (b) of this Section any defendant may move at any time for substitution of judge for cause, supported by affidavit. Upon the filing of such motion the court shall conduct a hearing and determine the merits of the motion.

■ Assuming compliance with statute, the right of the defendant to a substitution of judge is absolute. The provisions of section 114–5 of the Criminal Code (supra), are to be read and construed in pari materia with the provisions of chapter 146, sections 18–35, providing for the right to a change of venue for prejudice of the judge. See Committee Comments. See also The People v. Rosenbaum, 299 Ill 93, 94, 132 NE 433 (1921); The People v. Davis, 10 Ill2d 430, 434, 140 NE2d 675 (1957); and The People v. Myers, 35 Ill2d 311, 326, 220 NE2d 297 (1966). Venue provisions receive a liberal rather than a strict construction and should be construed to promote rather than defeat the right to a change in venue, particularly where prejudice on the part of a judge is charged; but defendant must comply with statutory requirements and the petition must be offered at the earliest practical moment. One criterion for determining the timeliness of such a motion is whether it is filed before the court has considered a substantive issue in the cause. The People v. Chambers, 9 Ill2d 83, 87, 136 NE2d 812 (1956). The purpose of the rule is to preclude counsel from first ascertaining the attitude of the trial judge on a hearing related to some of the issues of the cause, and then, if the court's judgment is not in harmony with counsel's theory, to assert the prejudice of the court as a ground for allowing the change. The People v. Chambers, supra, page 89.

■ While the State argues that the question of a psychiatric examination to determine the defendant's competency was an important element of the case and went to the merits involved, no authorities are offered in support of this position, and we believe that the nature of the competency proceedings indicates a different conclusion. Proceedings to determine competency of a defendant to stand trial, under the provisions of Ill Rev Stats 1967, c 38, § 104–2, are completely collateral to the

178

basic criminal charge, are civil in nature, and in no way involve the guilt or innocence of the defendant. See The People v. Geary, 298 Ill 236, 244, 131 NE 652 (1921). Therefore, we do not consider a ruling on a motion to set such a hearing, even over objection, one which goes to the merits of the case or relates to any issue of the crimes charged in the indictment.

The cases cited by the State are clearly distinguishable. In The People v. Chambers (supra), the petition was not presented until after the court had heard and ruled upon a motion to suppress evidence which involved presentation of the respective theories of the prosecution and the defense and the motion was not made until the date of trial. In The People v. McDonald, 26 Ill2d 325, 330, 186 NE2d 303 (1962), and in The People v. Deweese, 27 Ill2d 332, 335, 189 NE2d 247 (1963), rulings on motion for suppression of evidence were held to have gone to the merits of the case and prevented a subsequent petition for change of venue. In The People v. Wilfong, 17 Ill 2d 373, 375, 162 NE2d 256 (1959), the same judge had presided during all of the proceedings in defendant's case, and the motion for change of venue was not made until after the judge had overruled defendant's challenge to the constitutionality of the statute under which he was being prosecuted, and this at the time the case was called for trial and the jury called to the jury box. Other authorities cited by the State involve similar situations which are clearly in connection with the issues in the case. Considerable reliance is placed on The People v. Speck, 41 Ill2d 177, 242 NE2d 208 (1968). While the court there held (page 187) that the motion came too late even though it was technically filed within ten days after the case had been placed on Judge Paschen's trial call, the circumstances were completely different than those found here. Judge Paschen, sitting in Cook County, had already presided over a pretrial sanity hearing, had granted a motion for change of place of trial, and had denied a

179

motion to dismiss the indictments. The same judge was assigned to hear the case in Peoria County where it had been transferred for trial. Here, all the prior proceedings were had before Judge Gundry and the single act relied upon to defeat the change of venue was the setting of a date for a competency hearing.

■ Under the circumstances present here, it was reversible error for the court to refuse defendant's motion for substitution of judge, and the case must be remanded for a new trial.

We will consider briefly defendant's remaining claims of error in order to be of assistance to the court below on retrial.

■ Defendant's general objection to allowing Dr. Graybill to testify at the trial was properly overruled. The examining psychiatrist who testified in a competency hearing, under the provisions of Ill Rev Stats 1967, c 38, par 104-2(d), may thereafter testify at the criminal trial to the extent that the prohibition against testimonial compulsion is not violated. The psychiatrist may therefore, within such limitation, properly testify to statements made by the accused while being examined, which are offered to show defendant's mental condition and not for their truth. The People v. Williams, 38 Ill2d 115, 121, 230 NE2d 224 (1967); People v. Lowe, 109 Ill App2d 236, 239, 248 NE2d 530 (1969). The protection afforded a defendant is against being required to make incriminating statements and there is no violation of constitutional rights against self-incrimination in requiring defendant to cooperate with a psychiatrist since he may not be required under the terms of the statute to thereby incriminate himself. The People v. English, 31 Ill2d 301, 307, 201 NE2d 455 (1964). Defendant seeks to distinguish the authorities cited on the basis that they apply only when defendant requests the competency hearing, but we perceive no basis for the distinction since the statute makes it mandatory for the court to conduct a

hearing whenever it has reason to believe that the defendant is incompetent whether the information comes from his own observation or on motion of either the state's attorney or the defense counsel. See The People v. Geary, supra, page 242.[4]

A question has also been raised, whether it was proper for the judge to qualify the jury for the death penalty when the state's attorney indicated that he was not asking for it. While the discussion in chambers as to the questions to be asked prospective jurors was not reported, it is conceded that the state's attorney was not demanding the death penalty. Over objection by defendant's counsel in chambers, the court proceeded to qualify the jurors by asking each juror in substantially the same language, "Do you have any conscientious scruples about the death penalty?" Only if the juror indicated a problem, did the court then ask whether the death penalty would affect the juror's judgment as to the guilt or innocence of the accused. The defendant has argued that the state's attorney and not the court should have made the decision to qualify the jury for the death penalty and that, in any event, the question improperly omitted the qualifying phrase, "in proper cases."

■■ ■■ The trial judge has the primary function of examining jurors at to their qualifications under the provisions of Ill Rev Stats 1967, c 38, § 115–4. It is proper to qualify a jury for the death penalty in a capital

---

[4] A particular objection was made to Dr. Graybill reading to the jury a psychiatric report of his interview with the defendant on Sept 26, 1968. Defendant claims error in the overruling of his objection, suggesting that, in view of his objecting to the competency hearing, he was under testimonial compulsion, compounded by absence of warning of the possible later use of his statements against him. Within the rationale of the cited cases, on retrial, incriminating statements in the report should not be given to the jury beyond those clearly necessary to show mental condition, and the jury should then be advised that the statements are not admitted for their truth, on the issue of guilt.

case, and absent an indication by the trial court that such verdict is suggested or preferred, we would not consider the court's action as error. See The People v. Bernette, 30 Ill2d 359, 368–9, 197 NE2d 436 (1964). We would, however, disagree with the view of the trial court that it had the duty in every case charging a capital offense to so qualify the jury. We would also note that, where the jury does not, in fact, recommend the death penalty, the court will not reverse for error in the qualifying questions absent proof that the jury was necessarily "prosecution prone." See Bumper v. North Carolina, 391 US 543, 20 L Ed2d 797, 801, 88 S Ct 1788 (1968).

Lay witnesses for the State were permitted to give an opinion, on the ultimate issue of the insanity defense, that the defendant appreciated the criminality of his conduct at the time of the shooting, and could have conformed his conduct to the requirements of law. The witnesses included a police chief who had observed defendant during one and one-half hours after the shooting and who testified to numerous years of experience in observing insane persons; the sheriff, who had known the defendant for thirty years and saw him shortly after the shooting; and a psychologist who had given psychological tests to defendant on May 3rd, 1968, at the East Moline State Hospital.[5] The latter was concededly called and characterized by the state's attorney as a nonexpert witness, but nevertheless gave her opinion in answer to a hypothetical question.

The defendant argues that the ultimate question which the jury must decide (whether defendant, in a witness's

---

[5] The killing of defendant's wife occurred on July 19th, 1968. On April 29th, 1968, defendant had been admitted to the East Moline State Hospital at the suggestion of his wife and the sheriff's office as a voluntary patient. He was given a psychiatric examination including various psychological tests, but at his request immediately after admittance he was discharged on the expiration of his five days' notice.

opinion, "as a result of mental disease lacks substantial capacity to conform his conduct to the requirement of the law"), contains technical language which demands a re-evaluation of authorities under the previous law that lay witnesses could give an opinion as to whether a defendant was "insane." (E. g. The People v. Pruszewski, 414 Ill 409, 413, 111 NE2d 313 (1953); The People v. Krauser, 315 Ill 485, 509–10, 146 NE 593 (1925).) Defendant further points out that he was not permitted to cross-examine the chief of police on what the witness considered a "delusion" on the ground that the cross-examination involved a "technical question" improperly propounded to a nonexpert witness, as illustrative of the problem.

In People v. Pecora, 107 Ill App2d 283, 299–300, 246 NE2d 865 (1969), approval was given without extended discussion or citation of authority to the action of the trial court allowing "testimony on the ultimate question of defendant's sanity by some policemen . . . ." In People v. Wax, 75 Ill App2d 163, 171–4, 220 NE2d 600 (1966), the court upheld the admission of testimony of lay witnesses "who were permitted to express an opinion upon the insanity of the defendant at times approximating the shooting" (page 171). The opinion also held that cross-examination of a lay witness by reference to "esoteric nomenclature" (i. e. "acute schizophrenia") to discredit the witness when not in reference to his direct testimony, was properly denied (page 175). The actual form of the question in each of these cases is not noted in the opinion. But in The People v. Ford, 39 Ill2d 318, 322, 235 NE2d 576 (1968), the Illinois Supreme Court impliedly approved the admission of opinions by lay witnesses that the defendant "was able to substantially appreciate the criminality of her conduct and was able to conform her conduct to the requirement of law."

The argument that a layman cannot make meaningful conclusions on an ultimate question of insanity, which

now involves areas of mental disease or defect and mental capacity to appreciate the criminality of conduct and the ability to conform conduct to law, has considerable merit. As the behavioral sciences improve and become more exact, the merit of the arguments will become enhanced. But the same arguments were existent prior to the adoption of the definition of insanity in the present Criminal Code (SHA Ch 38, Sec 6–2) and reference to the Committee Comments suggest that Section 6–2 did not constitute a radical departure from the previous court made statements of the rule, except to conform its language to terms more congenial to modern psychiatric understanding. (See also The People v. Carpenter, 11 Ill 2d 60, 142 NE2d 11 (1957).)

 The direction of the cases, both prior to and subsequent to the adoption of the Criminal Code of 1961, indicates no departure from the right of a lay witness, after proper foundation based upon his own observation, to give his opinion as to whether or not a defendant is criminally responsible for his conduct as the result of mental disease or mental defect.

 The lay witness, however, should not be allowed to give his opinion in answer to a hypothetical question, as his opinion must be based on his own observation. People v. Wax, supra, page 172.

We do not consider the remaining questions which defendant has raised, as we have not found them either to be substantial or likely to arise on a new trial.

The judgment of the trial court is reversed and the cause remanded for a new trial.

Reversed and remanded.

MORAN, P. J. and DAVIS, J., concur.