THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ROYCE R. OATIS, Defendant-Appellant.

First District (5th Division)    No. 77-450

Opinion filed December 30, 1977.

James Geis, Ralph Ruebner, Victoria J. Meyers, and Kathy M. Morris, all of State Appellate Defender's Office, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon, Iris E. Sholder, and Winifred H. Date, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE WILSON delivered the opinion of the court:
This is an appeal from an order finding defendant in contempt of court and sentencing him to serve 15 days in the county jail. The only issue

raised on appeal is whether the trial judge erred in finding defendant in contempt. We reverse.

Defendant and a co-defendant were charged with battery and unlawful use of a weapon. Their case was called for trial on December 1, 1976, and they immediately indicated that they did not desire to be represented by a public defender, that they could afford their own attorney and that they wanted additional time within which to obtain private counsel. Defendants had been represented by three different attorneys while their case was pending. Their third attorney had withdrawn only a few days prior to trial and they had not been successful in contacting him since then for the purpose of obtaining material they had given him which they felt was necessary to their defense. In response to their statements the court told them that it had been told by their third attorney that he had not been paid. Defendant Oatis replied that their third counsel had been paid a retainer and presented a receipt for the payment. The court suggested that they permit a public defender to represent them, or, at least, to assist them if they wanted to proceed without counsel. The court then asked the public defender in the courtroom to assist defendants in the presentation of their case. The public defender responded that he would give whatever assistance defendants requested. The court then commenced jury selection. Defendants proceeded *pro se* and did not take advantage of the public defender's offer of assistance in presenting their case.

After the court, the prosecutor and the co-defendant questioned the first panel of four prospective jurors, defendant Oatis said he would like to make a statement. Thereupon the parties withdrew to the judge's chambers. There Oatis told the judge that he and the co-defendant had not had sufficient time to prepare for trial. Their third attorney had withdrawn a few days prior to trial, and at that time, in the presence of the judge and the attorney, Oatis had asked the judge to require this attorney to return documents pertaining to the case. The judge did not do so. The defendants had been unable to contact this attorney despite repeated efforts to do so, including going to his office. Oatis asked the court for time to retrieve these documents. The court responded that he would have time to do so in the future. The parties then returned to the courtroom and Oatis repeated his desire to make an opening statement. The court explained that opening statements are made after the jury is selected. Despite this explanation, Oatis proceeded to state in the presence of the prospective jurors that he and his co-defendant were not given the opportunity to obtain private counsel after their third attorney withdrew and that they had not been given the opportunity to obtain documents held by this last counsel which would refute the charges against them. Oatis said they had asked the court to give them time to

obtain the documents but their request was not granted. Oatis added that they had not had time to prepare their case, they were being pressed into trial and they were being treated unfairly. The court responded that these matters were beyond the scope of jury selection and told Oatis that the jury must be selected through questions regarding the qualifications of panel members to sit as jurors. Oatis said he had no objection to that procedure that he had no questions to ask the panel and wanted to ask about the rights of himself and his co-defendant. He added that he did not think the judge had been fair, every motion he made had been denied and his rights had been violated. The court recessed for lunch.

After the panel left the courtroom and before the parties departed, the judge stated that defendant's statements on matters beyond the scope of jury selection were improper and disruptive to jury selection. The court then admonished Oatis not to make such statements in the presence of the prospective jurors. Oatis replied that he understood and that it was not his objective to disrupt jury selection or cause a disturbance in the court. He then asked why he was being forced into trial without needed documents, and why the court wanted him and the co-defendant to select a jury when they did not even have a defense prepared. Oatis added that he and his co-defendant might have agreed to have a bench trial if they had been represented by counsel. The court replied that they had had one year to prepare their case and told them that they could contact their last attorney and obtain their documents. Oatis reiterated that all attempts to do so had failed. The court responded that they would have the opportunity to contact their former lawyer "today" and "this evening."

After lunch Oatis spoke to the court outside the presence of the panel. He asked the court if its admonishment meant that he would be held in contempt if he made any statements whatsoever. The court's response was: "You heard the admonition." The court suggested that Oatis ask the prospective jurors questions similar to those asked by his co-defendant and mentioned that he had a right to challenge prospective jurors. The court also suggested that the prospective jurors could be asked questions concerning their fairness and impartiality. The first panel of four was called and the court asked Oatis if he wanted to ask any questions. Oatis responded that he did not want any member of a jury to judge him when he did not have sufficient time to prepare his case and was without counsel, therefore he saw no reason to ask questions. Oatis then stood mute on the first panel. Thereupon the co-defendant said that he and Oatis were in no position to challenge anyone as they did not know how to determine whether a juror was prejudiced. The court asked if they wanted any suggestions. Oatis said "no" and begged the court for time to obtain counsel. The court asked if either defendant wished to challenge

any member of the first panel for cause. Oatis replied that they did not know how to challenge them. The court then asked if they did not want any of the four prospective jurors on the jury. Oatis replied that he had no answer for that question and the co-defendant said: "We are not professionals, your Honor, we cannot answer that." The court then assumed they did not wish to use any of their challenges and ordered the first panel sworn.

Thereafter the second panel of four prospective jurors was called. Oatis participated in the questioning of the second panel and did not comment on his inability to either prepare for trial or obtain private counsel. The co-defendant and Oatis each exercised several peremptory challenges against prospective jurors in the second panel and they subsequently accepted the second panel. Court adjourned during the *voir dire* of the third panel.

Jury selection resumed on December 2, 1976. Before questioning the members of the third panel and in their presence, the co-defendant stated that he and Oatis were not given ample time to prepare, that their counsel withdrew two days before trial, that he did not want a public defender and that they had been forced to trial at this time. In response, the court admonished *both* defendants. Subsequently, while outside the presence of the panel, both defendants complained about the court's refusal to excuse a prospective juror after they had established what they viewed as cause for doing so. Proceedings were resumed and both defendants repeated their complaint. Oatis accused the court of "muscling us," and the court requested Oatis to refrain from "inflammatory outbursts." *Voir dire* continued until Oatis noticed police reports in the prosecutor's possession. He asked permission to approach the bench and was given permission to do so. He then asked the judge to order the prosecutor to give the reports to the defendants. The court, outside the presence of the panel, responded that the reports were not in evidence and the defendants would be entitled to inspect them during trial. Oatis asked if he could see the reports before trial began and complained about not having the opportunity to examine anything prior to *voir dire*. He also complained that neither he nor his co-defendant knew how many peremptory challenges they had until after the first panel had been accepted by the court. The court ordered the prosecutor to let defendants see the police reports. The prosecutor refused to show them the reports and told the judge: "You'll have to hold me in contempt." Defendants complained about the prosecutor's action. Oatis reiterated that they had not been given ample time to prepare a defense and again complained about the court permiting their third attorney to withdraw when they had paid him and had a receipt to prove it. Oatis asserted that they had not

been allowed to subpoena their witnesses. The court again told the prosecutor to let the defendants examine the reports and the prosecutor again refused. The defendants again complained about the refusal. The court then indicated that the prosecutor should let defendants see the report after jury selection was completed. Proceedings were then continued in the presence of the panel.

After further questioning, the parties retired to chambers and Oatis asked the judge to explain the meaning of the standard of proof in a criminal case. The judge refused to do so. The parties returned to the courtroom and questioning of the third panel continued until the luncheon recess. During this period the co-defendant asked numerous questions and Oatis asked comparatively few questions.

*Voir dire* was resumed after lunch. At this point Oatis asked one of the prospective jurors whether he thought he could give a fair verdict if two parties presented evidence but one of the parties did not have ample time to present his evidence. The prospective juror responded that he would have to make his decision on the facts presented. Oatis then asked: "Knowing that one party didn't have ample time, do you think you could give a just decision?" The prosecutor objected and the court stated that the question was improper. Oatis then asked the panel member: "[D]o you think that I could give a proper verdict on you without knowing all the evidence?" The prosecutor objected. The court said this question was the type of statement that defendant was admonished about making yesterday and that it was beyond the scope of *voir dire*. Oatis replied that he did not understand and said he had not repeated an earlier question. The court stated that a statement which violated the admonition of the court was contained within the last question. Oatis responded that he neither made a statement nor repeated a question. The court then admonished Oatis not to make inflammatory speeches during jury selection. Oatis said: "I didn't make any speeches." The court replied: "Or statements." Oatis responded: "I didn't make any statements." The court then held Oatis in contempt and sentenced him to 15 days in county jail. Thereafter Oatis explained that he meant no disrespect to the court, that he did not know what "admonished" meant and that he did not repeat a question or make a statement.

On December 2, 1976, the court entered a written order of contempt. The order gave the grounds for conviction as follows:

> "That on December 1, 1976, this cause was called for trial and jury selection commenced. Thereupon Royce R. Oatis proceeded to and did persist in the following during voir dire, to wit:
>
>> stated that he was 'being forced to trial,' that he had 'not adequate time to prepare,' that he had 'not been able to

retain counsel of his own choosing,' together [with] similar and related remarks not germane to voir dire, all of the foregoing heard by the panel.

Whereupon this Court admonished said Royce R. Oatis that such statements were out of order and not relevant to voir dire. Royce R. Oatis persisted in such conduct as aforesaid; whereupon he was admonished that this conduct if continued before the panel would be considered contempt. Nonetheless, on December 2, 1976, defendant Royce R. Oatis again engaged in conduct similar to that which the Court admonished him against on December 1, 1976, to wit: that with jury selection still in progress, and in the presence of the jury, he stated that he was not being given 'ample time to prepare his evidence.' "

OPINION

■■ Defendant was found in direct criminal contempt of court. Acts which constitute such contempt are those which are calculated to embarrass, hinder or obstruct the court in its administration of justice or to derogate from the court's authority or dignity, thereby bringing the administration of law into disrepute. See *People v. Javaras* (1972), 51 Ill. 2d 296, 281 N.E.2d 670; *People v. Miller* (1972), 51 Ill. 2d 76, 281 N.E.2d 292; *People v. Wilson* (1975), 35 Ill. App. 3d 86, 341 N.E.2d 34.

■■ It is clear to us that defendant is an intelligent layman with some knowledge of the law. It is equally apparent, however, that there were many things he did not understand until after they were explained to him at various times during *voir dire*, for example, when he could make an opening statement, what matters were within the scope of jury selection, what kinds of questions he could ask during *voir dire*, how to challenge jurors and how many peremptory challenges he could exercise. In addition, there were some things that should have been explained to him that were not, such as why he could not see the police reports after the court ordered the prosecutor to let the defendants look at them, and the meaning of the court's admonitions. When Oatis asked the court to explain the meaning of its admonition after lunch on December 1, the court should have clearly explained that it involved not only statements, but also questions which assumed as fact such things as not having adequate time to prepare for trial. While we sympathize with the trial judge, we do not agree with him that the question "[D]o you think that I could give a proper verdict on you without knowing all the evidence?" contained the type of statement that defendant had been admonished about making. Also, contrary to the contempt order, we do not find a statement by Oatis that *he* was not being given ample time to prepare *his* evidence in any of the questions immediately preceding the finding of

contempt. While we believe that defendant's utterances were often improper, we are of the opinion that he was making a good faith effort to represent himself in a situation involving unusual circumstances, and we do not find that his actions fall within the definition of direct criminal contempt. See *People v. Miller.*

Accordingly, the judgment of the Circuit Court of Cook County is reversed.

Reversed.

SULLIVAN, P. J., and LORENZ, J., concur.