THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
ROYCE OATIS, Defendant-Appellant.

First District (2nd Division)   No. 77-1417

Opinion filed March 27, 1979.

Ralph Ruebner and Alan D. Goldberg, both of State Appellate Defender's Office, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Lee T. Hettinger, James S. Veldman, and Suzanne Philbrick, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE PERLIN delivered the opinion of the court:

After a jury trial in which defendant appeared pro se, defendant was found guilty of one charge of battery and not guilty of a second charge of battery. Defendant was sentenced to two years probation with the first six months to be served in the Department of Corrections. Defendant appeals raising the following issues for review: (1) whether the trial court erred in denying defendant's motion for substitution of judges; (2) whether defendant was denied a fair trial due to allegedly improper comments and questions by the court and the prosecution; (3) whether the trial court erred in failing to instruct the jury on the theory of self-defense; and (4) whether the trial court erred in failing to advise defendant of his right to counsel at the sentencing hearing.

We reverse.

On October 29, 1975, defendant, Royce Oatis, was charged with commission of a battery upon LaRoy Bauer, commission of a battery upon Craig Paul, unlawful use of a weapon and possession of a firearm without valid identification. After several continuances by the court pursuant to motions by defendant and to the court's own motions, the trial commenced on December 1, 1976. During the jury selection, defendant was held in contempt of court, and a mistrial was declared.[1] The contempt conviction was subsequently reversed by the appellate court. (56 Ill. App. 3d 613, 371 N.E.2d 1195.) The cause was reset for trial and after several continuances, defendant appeared before Judge Condon on April 18, 1977.

On April 18, 1977, defendant indicated to the court that he wanted to represent himself. The court instructed defendant to retain counsel because it did not believe defendant was qualified to represent himself. Defendant replied that he studied for almost two years at DePaul University, and that he was "trained in the truth." Defendant refused assistance from an appointed attorney and stated he was ready for trial. The court then held the cause on call from day-to-day until defendant obtained an attorney.

On April 19, 1977, the court told defendant that an attorney from the Chicago Bar Association was present in court and would speak with defendant. After conferring with defendant, the attorney reported to the court that defendant did not wish to be represented by counsel and insisted upon proceeding pro se. Defendant stated that he had a right under the constitution to proceed without counsel, and that he was ready for trial. The court announced that it would allow defendant to represent himself, although it advised defendant to accept the assistance of counsel.

Pursuant to a motion by the State, the charges of unlawful use of a weapon and possession of a firearm without valid identification, which charges stemmed from defendant's arrest, were severed from the battery charges. Defendant then requested a two-week continuance to prepare for trial. The court denied the request stating that on the previous day defendant answered ready for trial. The court offered to have the sheriff's office subpoena defendant's witnesses for trial the next day, but defendant refused.

On April 20, 1977, defendant stated that he was not ready for trial, and he made an oral motion that his case be transferred because the court had shown a racial discrimination against defendant. The court requested the public defender to prepare a written motion for substitution of judges

---

[1] It might be noted that Thomas Rembert was a co-defendant at the first trial, and he also proceeded pro se. Rembert's trial was severed from that of defendant prior to commencement of the second trial.

and stated that it had to be accompanied by an affidavit in compliance with section 114—5(c) of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1977, ch. 38, par. 114—5(c)). Defendant filed a written motion but did not present an affidavit. On April 21, 1977, the court denied the motion because no affidavit was filed. The following evidence was adduced at trial.

Craig Paul testified that on October 29, 1975, he was employed by Allstate Insurance Company in the Matteson, Illinois, office as a claims adjuster in the burglary division, home owner theft. Prior to October 29, 1975, defendant, who was insured by Allstate, submitted a claim, stating that certain items had been taken from his home in a burglary. Paul reviewed the claim and issued a draft on October 28, 1975. In the morning of October 29, 1975, Paul was informed that defendant was in the drive-in reception area of the office and wanted to see Paul and his supervisor. Paul informed his supervisor, LaRoy Bauer, and they proceeded to the reception area where defendant and his friend, Thomas Rembert, were waiting. Defendant stated that his bank would not cash the draft. Paul, Bauer, defendant and Rembert then went into a private office in the reception area. Bauer went behind a desk, and Paul sat down in the corner while defendant and Rembert stood in front of the desk. While Bauer attempted to find out what the problem was, defendant became upset and started yelling and pounding on the desk with his fist. Defendant then leaned across the desk and pushed his finger against Bauer's nose. Bauer made a motion to move defendant's hand from his face. Defendant grabbed Bauer's tie and head and pulled Bauer's head down and hit the desk. Defendant also hit Bauer around the head and shoulders. At this time Paul stood up, reached across the desk to try and separate defendant and Bauer, and was struck on the side of the head. Paul then stepped back and told defendant and Rembert to leave. Defendant hit Bauer once more and then left.

LaRoy Bauer testified that on October 29, 1975, he was employed by Allstate Insurance Company as a property claims supervisor in the Matteson office. At approximately 11:25 a.m. Bauer accompanied Paul to the reception area because one of Paul's customers had a problem with a draft. Bauer examined the draft, and it appeared to be properly written and authorized. Bauer told defendant he would call the bank to determine what the problem was; however, defendant insisted that he be paid in cash. Bauer, Paul, defendant and Rembert then went into a private office, and Bauer went behind the desk. As Bauer leaned across the desk to pick up a telephone and call the bank, defendant started banging on the desk with his fist and demanding cash. Defendant then pushed Bauer's nose with his finger, and Bauer made a motion to move defendant's hand from his face. Defendant then grabbed Bauer's tie and hair and pushed

Bauer's face into the desk. Bauer testified that his head banged into the desk more than once, and he was in a groggy, semiconscious condition. Bauer also felt blows around his back, neck and shoulders. Bauer saw defendant and Rembert go out the door, and police officers came, and Bauer signed a complaint. Bauer testified that he did not do anything to provoke the attack by defendant. The day after the incident, Bauer had an extreme headache, nausea and blurred vision, and he went to the Pinder-Smith Clinic in Blue Island.

Defendant testified on his own behalf that on August 24, 1975, his house was burglarized, and he called Allstate to file a claim. On August 25, 1975, defendant talked to Bauer, and Bauer sent defendant the necessary papers, which defendant filled out and returned. Approximately one month later, defendant called Bauer several times to inquire about his claim and was told that the proof of loss was not sufficient and that receipts were needed. On October 6, 1975, defendant's house was burglarized again, and he filed another claim with Allstate. Defendant had several telephone conversations with Bauer and Paul, and finally on October 28, 1975, Paul gave defendant a draft. Defendant attempted to cash the draft at a currency exchange and at a bank; however, both refused to cash it. On October 29, 1975, defendant and his friend, Thomas Rembert, went to the Allstate office at approximately 11:45 a.m. to see Bauer and Paul. They went into an office, and defendant and Rembert sat down in front of a desk while Bauer sat behind the desk and Paul stood to the side. Defendant put the draft on the desk and asked whether it could be cashed. Paul and Bauer replied that they could not do anything with the draft, and they refused to issue a new draft. Defendant stood up, hit the desk with his fist and stated he was tired of Bauer and Paul playing games with him and his money. Bauer then struck defendant on the cheek and opened up his lip. Defendant grabbed Bauer's tie and raised his arm, but Paul grabbed defendant's arm and restrained him from hitting Bauer. Defendant denied pushing Bauer's head against the desk. Defendant left the draft on the desk, and he and Rembert walked out of the office. Bauer followed them and yelled at the receptionist to call the police.

Defendant testified that he and Rembert left the Allstate office and drove to the police station at 216th and Main to file a complaint against Bauer. An officer, whom defendant identified in court as Officer Sutorius, told defendant he would have to go to the station at 148th and Cicero. Defendant and Rembert then proceeded down Interstate 57 and when they exited at 11th Street, police officers from Matteson and Calumet Park stopped them. Both defendant and Rembert were arrested and searched, and the car was searched.

Thomas Rembert testified that he was a neighbor of defendant and on October 29, 1975, he accompanied defendant to the Allstate office.

When defendant told Bauer that the bank would not accept the draft, Bauer replied that it was defendant's problem. Defendant stood up and hit the desk with his hand; Bauer then stood up and struck defendant in the face. Rembert got between defendant and Bauer, and Bauer told them to leave. Defendant picked up his papers from the desk and left. Rembert testified that on the way to the office, defendant was not upset, and that the conversation began as a calm discussion about the draft.

Ray Sutorius testified in rebuttal that on October 19, 1975, he was employed by the Matteson Police Department. At approximately 11:27 a.m., while on routine patrol, he received a call and proceeded to the Allstate office. He made a report and then returned to the police station. Officer Sutorius did not see defendant come into the station and attempt to file a complaint. He first saw defendant at approximately noon after defendant was arrested. Officer Sutorius did not recall seeing any marks or bruises or a split lip on defendant.

LaRoy Bauer was recalled and testified that he had only one telephone conversation with defendant prior to October 29, 1975, and that it was standard procedure that his name, as supervisor, was on letters regarding claims. Bauer denied striking defendant.

Craig Paul was recalled and testified that he did not grab defendant's arm, and he did not see Bauer strike defendant. Paul observed defendant push Bauer's face into the desk and strike Bauer repeatedly. Paul did not observe any marks or a cut lip on defendant.

Kenneth O'Keefe testified that on October 29, 1975, he was employed by the Matteson Police Department, and he arrested defendant and conducted a search of defendant for weapons. Officer O'Keefe did not observe any marks, bruises or cuts on defendant. Officer O'Keefe searched the automobile that defendant was driving and found a loaded automatic pistol on the floor of the front seat.

Based on the foregoing evidence the jury found defendant guilty of battery upon LaRoy Bauer and not guilty of battery upon Craig Paul.

Defendant initially contends that the trial court erred in denying his motion for substitution of judges. Defendant alleges that the motion was filed within 10 days after the case had been placed on the judge's trial call and at the earliest practical moment, and thus the right to substitution was absolute under section 114—5(a) of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1975, ch. 38, par. 114—5(a)). The State contends that the motion was not filed within the 10-day period, and that defendant was required to file an affidavit in compliance with section 114—5(c).

■■■ Section 114—5 of the Code of Criminal Procedure of 1963 provides in pertinent part:

> "(a) Within 10 days after a cause involving only one defendant has been placed on the trial call of a judge the defendant may

move the court in writing for a substitution of judge or any 2 judges on the ground that such judge or judges are so prejudiced against him that he cannot receive a fair trial. Upon the filing of such a motion the court shall proceed no further in the cause but shall transfer it to another court or judge not named in the motion.

     \* \* \*

(c) \* \* \* any defendant may move at any time for substitution of judge for cause, supported by affidavit. Upon the filing of such motion the court shall conduct a hearing and determine the merits of the motion."

It has been held that section 114—5 is to be given a liberal interpretation so as to permit rather than deny a substitution. (*People v. Thomas* (1st Dist. 1978), 58 Ill. App. 3d 460, 462, 374 N.E.2d 795; *People v. Flowers* (1st Dist. 1977), 47 Ill. App. 3d 809, 811, 365 N.E.2d 506.) A motion for substitution is timely filed when brought within 10 days of the date defendant could be charged with knowledge of the assignment of the case to the trial judge. *Thomas*, at 462; *People v. Ehrler* (2d Dist. 1969), 114 Ill. App. 2d 171, 177, 252 N.E.2d 227.

■■ In the case at bar no order of assignment or rule of practice governing assignment is included in the record. The record shows that after defendant's first trial ended in a mistrial, the cause was reset for trial on February 1, 1977. On February 1, 1977, Judge Maher granted defendant a continuance to March 1, 1977; on March 1, 1977, Judge Samuels granted defendant a continuance to March 22, 1977, so that defendant could retain counsel. On March 22, 1977, Judge Duffy granted defendant a continuance to April 18, 1977. Defendant appeared before Judge Condon on April 18, 1977, and on April 19, 1977, and on April 20, 1977, defendant requested a substitution of judges. In accordance with the liberal rules of interpretation and based on the record before us, we find that defendant cannot be charged with knowledge of the assignment of his case to Judge Condon for trial prior to April 18, 1977. Since defendant's motion was filed two days later and was within the 10-day period, defendant's right to substitution was absolute, and a supporting affidavit was not required. Thus, it was reversible error for the trial court to refuse defendant's motion for substitution of judges, and the cause must be remanded for a new trial.

Because of our holding on defendant's first contention, we need not reach the remaining issues presented for review. We note, however, for purposes of further proceedings in this cause, that the record before us does not clearly indicate that defendant was advised of his right to counsel prior to sentencing. This court held in *People v. Glass* (1st Dist. 1977), 49 Ill. App. 3d 617, 364 N.E.2d 405, *appeal denied* (1977), 66 Ill. 2d 633, that sentencing is a critical stage in the conviction, and the record

must show that counsel was made available or was validly waived at the time of sentencing. A waiver of counsel prior to trial does not continue in effect through the sentencing proceedings.

For the foregoing reasons the judgment of the circuit court is reversed, and this cause is remanded for further proceedings consistent with this opinion.

Reversed and remanded.

STAMOS, P. J., and DOWNING, J., concur.