(No. 22825.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* ABE ALLEN, Plaintiff in Error.

*Opinion filed February 21, 1935—Rehearing denied April 9, 1935.*

Orr, J., dissenting.

WM. SCOTT STEWART, for plaintiff in error.

OTTO KERNER, Attorney General, THOMAS J. COURTNEY, State's Attorney, and J. J. NEIGER, (EDWARD E. WILSON, and HENRY E. SEYFARTH, of counsel,) for the People.

Mr. JUSTICE FARTHING delivered the opinion of the court:

Abe Allen has sued out this writ of error to review the record of the Appellate Court for the First District in affirming his conviction in the criminal court of Cook county for violating the Motor Fuel Tax law. Laws of 1929, p. 625.

This cause was before this court in 352 Ill. 262, and was transferred to the Appellate Court because no fairly debatable constitutional question was presented. The indictment contained seventeen counts, but on the trial the last count was *nollied*. The first count charged that the defendant on March 1, 1930, and continuously thereafter during that month, transported into and received in Cook county a large amount of motor fuel from without the State for sale and use in this State. The quantity of motor fuel

so transported and received was alleged to be more than twenty gallons, but the exact amount was to the grand jurors unknown. It was charged that Allen sold the amount received and collected from the purchasers a tax of three cents per gallon, and unlawfully and willfully failed and refused, and still refuses, to make payment to the Department of Finance of this State of the amount of taxes, or of any part thereof, so collected, contrary to the statute, etc. The other counts are substantially the same except as to day and month, since each succeeding count lays the charge one month later than the count preceding it. The last count is for the month of July, 1931. The defendant was found guilty by a jury on all sixteen counts, and the court sentenced him on each of the first six counts to pay a fine of $500 and to six months' imprisonment in the house of correction of the city of Chicago. These sentences were to run consecutively. On the remaining counts the defendant was sentenced to six months' imprisonment in the house of correction, which sentences were to run concurrently with that on the sixth count.

During the time covered by the indictment the defendant was sold gasoline under the name of Midway Refining Company. He had two bulk plants, with a storage capacity of 74,000 gallons. He also had an interest in some filling stations. He bought most of his gasoline from the Standard Oil Company of Indiana and the Phillips Petroleum Company and sold it to filling station operators, bus companies and cartage companies. In addition to the selling price he collected from his vendees the tax of three cents per gallon. He had no distributor's license and made no monthly returns or payments to the Department of Finance. The record shows that he bought from the Standard Oil Company of Indiana between March 4, 1930, and March 11, 1931, a total of ninety tank car-loads, amounting to over 800,000 gallons. His purchases of gasoline were made in the following manner: He would order a tank car of gaso-

line from the Standard Oil Company through its Chicago office. Upon receipt of the order the company would cause the car-load to be shipped from its refinery at Whiting, Indiana, to South Holland, Illinois, over the Baltimore and Ohio railroad and Chicago Terminal railroad. In every instance a uniform order bill of lading was used. The Standard Oil Company would consign the gasoline to its order and notify the Midway Refining Company. Allen had a credit arrangement with the Standard Oil Company for two cars of gasoline. When he was notified that the gasoline had arrived at South Holland he would go to the Chicago office of the Standard Oil Company and one of its employees would endorse the bill of lading to him. If he owed for two cars of gasoline he would have to pay cash in order to get the bill of lading, otherwise he was given the bill of lading by virtue of the credit arrangement. When he obtained the bill of lading he arranged with the Chicago and Eastern Illinois Railroad Company to haul the gasoline from South Holland to his bulk plant.

The defendant contends that the judgment should be reversed because the evidence does not show that he was a distributor of gasoline under the statute; that the indictment did not sufficiently charge a crime; that the court erred in instructing the jury; that the venue was not proved; that the People should have been required to elect on which count they would proceed, and that the trial court made remarks which constitute prejudicial error.

The material part of section 15 of the Motor Fuel Tax act of 1929 is, that whoever, "1. Acts as a distributor of motor fuel after July 31, 1929, without having a license so to do; * * * 4. Willfully fails or refuses to make payment to the Department of Finance as provided either in section 6 or section 7; * * * is guilty of a misdemeanor, and shall be fined not less than twenty-five ($25) dollars, nor more than five hundred ($500) dollars, or be imprisoned in the county jail not longer than six months, or be

both fined and imprisoned." By section 1 of the act a "distributor" is defined to be "a person who, for sale or use in this State, either produces, refines, compounds or manufactures motor fuel in this State, or transports motor fuel into this State or receives motor fuel transported to him from without the State. It does not, however, include a person who receives or transports into this State and sells or uses motor fuel under such circumstances as precludes the collection of the tax herein imposed, by reason of the provisions of the constitution and statutes of the United States," etc.

The defendant insists the proof shows that he did not transport gasoline into this State nor receive gasoline transported to him from without the State. He insists that he received gasoline from the Standard Oil Company after it had been brought into this State by that company, and that, as a matter of law, under this state of the record he was not a distributor. As we have already stated, the defendant placed his order at the company's Chicago office. The gasoline was shipped from its refinery in Indiana to its own order, and Allen was given the bill of lading under a credit arrangement or by paying cash. An examination of paragraph 2 of section 20 and of paragraph (a) of section 22 of the Uniform Sales act (Cahill's Stat. 1933, p. 2466; Smith's Stat. 1933, p. 2559;) discloses that Allen was a distributor and that he transported gasoline into this State. Paragraph 2 of section 20 provides: "Where goods are shipped, and by the bill of lading the goods are deliverable to the seller of (or) his agent, or to the order of the seller or of his agent, the seller thereby reserves the property in the goods. But if, except for the form of the bill of lading, the property would have passed to the buyer on shipment of the goods, the seller's property in the goods shall be deemed to be only for the purpose of securing performance by the buyer of his obligations under the contract." Section 22 provides:

"Sec. 22. Unless otherwise agreed, the goods remain at the seller's risk until the property therein is transferred to the buyer, but when the property therein is transferred to the buyer the goods are at the buyer's risk whether the delivery has been made or not, except that—

"(a) Where delivery of the goods has been made to the buyer, or to a bailee for the buyer, in pursuance of the contract and the property in the goods has been retained by the seller merely to secure performance by the buyer of his obligations under the contract, the goods are at the buyer's risk from the time of such delivery."

In the light of the above quoted sections it is apparent that the risk of loss passed to the defendant when the gasoline was shipped from the refinery in Indiana, and that the order bill of lading was merely a security device. It follows that the defendant was transporting gasoline into this State, and so his contention that he is not a distributor under the act must be overruled.

It is next urged that the court erred in overruling the defendant's motion to quash the indictment because it did not sufficiently charge him with the crime and because it failed to negative the exceptions in the statute. The charge in the indictment is to the effect that the defendant, after bringing gasoline into the State as a distributor, sold it, collected a tax for it and did not pay the tax to the State of Illinois. This charge is clear and is expressed substantially in the language of the statute. The indictment was sufficient in substance, and the motion to quash for insufficiency was properly overruled. (*People* v. *Munday,* 293 Ill. 191, 195.) Furthermore, it was not necessary that the indictment aver that Allen's shipments of gasoline were not exempt from the tax by reason of the provisions of the constitution and statutes of the United States. The exception was not incorporated in the enacting clause of the statute and was not descriptive of the offense. It was not nec-

essary that the exception be negatived in the indictment. It was a matter of defense. *People* v. *Saltis,* 328 Ill. 494, and cases there cited.

The defendant next contends that the venue was not proved. It is well settled that in an indictment for embezzlement the venue is properly laid in the county where the accused was under a duty to account. (*People* v. *Davis,* 269 Ill. 256.) In *People* v. *Kopman,* 358 Ill. 479, where the defendant was charged with embezzling motor fuel tax money, we held that the venue was correctly laid in Sangamon county. The statute (Smith's Stat. 1933, chap. 127, sec. 17,) requires the Department of Finance to have its central office in the capitol building, in Springfield. We will not take judicial notice that branch offices have been established, (*People* v. *Allen,* 352 Ill. 262,) and in the absence of proof to the contrary the place where the defendant is under obligation to account is in Springfield. The same reasoning applies to this prosecution under section 15 of the Motor Fuel Tax act, and the State capitol is the place where Allen was under a duty to pay the tax money to the Department of Finance in the absence of proof that there was a branch office of that department in Cook county authorized to receive payment. What we said in *People* v. *Allen,* 352 Ill. 262, when this cause was first before us, concerned the allegation, and not the proof, of the venue in Cook county. The rule adopted with reference to venue in embezzlement cases applies with equal force to prosecutions under section 15 of the Motor Fuel Tax act. In both offenses the venue should be laid where the defendant is bound to account or pay over the money. The Appellate Court ruled adversely on this contention for the reason that it would be a defense if it were shown that the tax collected had been paid to the proper collection official, whether at the seat of government or at a branch office, and no such defense was made. But the People were obliged to prove that there was a branch office in Cook

county duly authorized to receive payment. The defense of payment was not an issue in this cause.

The other assignments of error need not be considered.

For failure of proof of venue the judgment must be reversed and the cause remanded.

*Reversed and remanded.*

Mr. Justice Orr, dissenting.