THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* SHIRLEY BROOKS, a/k/a Shirley Williams, Defendant-Appellant.

Fourth District   No. 12842

Opinion filed July 8, 1976.

984

Richard J. Wilson, of State Appellate Defender's Office, of Springfield, for appellant.

James R. Burgess, Jr., State's Attorney, of Urbana (G. Michael Prall, of Illinois State's Attorneys Association, of counsel), for the People.

Mr. JUSTICE SIMKINS delivered the opinion of the court:

On September 28, 1972, the grand jury returned a four count indictment charging defendant-appellant Shirley Brooks with the murder of John Shelton by stabbing with a knife. The incident allegedly occurred on September 9, 1972. Similar charges were returned against one Norma Jean Coleman. Brooks and Coleman were not tried together.

Defendant Brooks was tried beginning March 5, 1973, before a jury, convicted of voluntary manslaughter, and sentenced to a term of 3 to 10 years.

Norma Jean Coleman was called as a witness by the prosecution.

Defendant raises these three issues on appeal:

(1) Was defendant denied a fair trial by the failure of the court to grant a continuance pending the completion of a court-ordered psychiatric examination of the witness Coleman.

(2) Having appointed two psychiatrists to examine Coleman to determine her fitness to stand trial, the failure of the court to hold a hearing to ascertain her competency as a witness constituted a denial of due process, and

(3) Was defendant proven guilty beyond a reasonable doubt.

We find no error and affirm.

The factual background as to the first two issues is as follows: On February 2, 1973, on Coleman's own motion, the court appointed psychiatrists Drs. Harry Little and Lawrence Richards to examine Coleman for the purpose of determining her fitness to stand trial. On March 2, 1973, three days before trial, defendant's attorney orally moved for a continuance until the psychiatric examination had been completed, and a determination had been made as to her competency since the prosecution had indicated its intention to call Coleman as a witness. Defendant's brief states that when the oral motion was made defendant's counsel " * * * argued that if there was a question as to her (*i.e.*, Coleman's) competency to stand trial * * * that question would affect her competence as a witness in the instant case, * * *." That is not precisely what was contended. Counsel for defendant stated to the court that there is a distinction between competency to stand trial and one's competency to testify as a witness. This statement was made in reply to the court's remark that Coleman's competency to stand trial in her own case had nothing to do with the trial of Brooks. Subsequently counsel for defendant stated, "My point is that certainly if there is some question as to her own competency to stand trial in a case arising out of the same circumstances as this one, *that the basic issue is one of credibility.*" (Emphasis supplied.) The court then denied defendant's motion for continuance.

Coleman was the first witness called by the prosecution. Defendant

objected, stating that she was incompetent as a witness. The written report of Dr. Richards was made part of the record. Defendant requested a hearing "* * * so that the court will be fully advised as to the condition of this witness." The motion was denied, and Coleman then testified.

Dr. Richards' report was based upon a 1½ hour interview with Coleman at the county jail on February 14, 1973. His conclusions were that she was cooperative, oriented and behaving reasonably; that she still had an incompletely resolved or remitted psychosis, her thought processes were inadequate for a good understanding of the nature and purpose of the charge against her, and that her thought processes "are even more inadequate at this time for cooperation with and assistance of counsel in her defense."

After defendant's trial was completed Dr. Little submitted his report which was based upon interviews with Coleman during the period January 11 to January 30, 1973. Dr. Little had concluded that she understood the nature of the charges against her, and that she could cooperate with counsel in her defense.

Following the Brooks trial Dr. Richards submitted a supplemental report to the court which was based on a second examination of Coleman made in August, 1973. He found her to be a person of limited intelligence, but able to stand trial, cooperate and comprehend the charges against her.

Coleman's testimony, while somewhat confused at times, was, in substance, that she had stabbed Shelton in the shoulder, and that Brooks stabbed him several times with a butcher knife, and that the latter wounds resulted in Shelton's death.

■■ We perceive no error in the refusal of the trial judge to grant defendant's oral motion for continuance made three days prior to trial. Such a ruling will not be disturbed in this court absent a showing of clear abuse of discretion. (*People v. Hayes*, 52 Ill. 2d 170, 287 N.E.2d 465.) The motion was made orally, no supporting affidavits were filed; there is nothing in the record to suggest that defense counsel had made any effort to interview either Dr. Richards or Dr. Little, or to secure copies of their reports. At the time of trial Dr. Richards' report was available to defendant, and the absence of Dr. Little's report cannot be said to have prejudiced defendant since he considered her competent to stand trial. The only case cited by defendant on the issue of the claimed abuse of discretion involved in the denial of the motion for continuance is *People v. Wilson*, 29 Ill. 2d 82, 193 N.E.2d 449. In *Wilson*, the defendant was convicted of murder on a plea of guilty. On appeal the Supreme Court held that denial of a continuance on the ground of prejudicial publicity was not error; that denial of a motion for severance was not error; that denial of counsel's motion for continuance for further time to prepare was not error, and that denial of an oral motion for a sanity hearing was not error.

██ The only case argued in defendant's brief on the question of the failure of the court to hold a hearing to determine Coleman's competency as a witness is *People v. Cox*, 87 Ill. App. 2d 243, 230 NE.2d 900. This case does not hold that reversible error necessarily occurs if a trial judge fails to make a preliminary determination of the competency of a witness to testify, however preferable that procedure might be. The *Cox* opinion contains a full discussion of the test of competency of a witness. "The test of competence to testify as a witness is the capacity to observe, recollect and communicate." (*People v. Cox*, 87 Ill. App. 2d 243, 246, 247, 230 N.E.2d 900.) Sanity is not the test; an insane person may be acceptable as a witness if he possesses the several capabilities. (*People v. Enright*, 256 Ill. 221, 99 N.E. 936.) Persons adjudicated to be feebleminded may be competent as witnesses. (*People v. Lambersky*, 410 Ill. 451, 102 N.E.2d 326.) An idiot may be a competent witness. (*Truttman v. Truttman*, 328 Ill. 338, 159 N.E.775.) No case cited equates incompetency to stand trial with incompetency to testify.

██ The testimony of the witness Coleman, including direct and cross-examination, covers some 240 pages of record. Dr. Richards testified as to the results of the examination which he had conducted in the preceding month of February. The cross-examination of the witness was long, searching, and dealt with minute detail. It clearly demonstrated to the jury that Coleman was a person of limited intelligence. There appears to be no dispute over the fact that Coleman, Brooks and the decedent were present in an apartment when the altercation commenced, nor that Coleman was present when it continued outside the apartment. In *Schneiderman v. Interstate Transit Lines*, 394 Ill. 569, 69 N.E.2d 293, the Supreme Court stated that the question of the competency of a witness and the credit to be given to his testimony are closely related. The court then quoted the following language from Wigmore on Evidence §501 (2d ed.):

> "The tendency of modern times is to abandon all attempts to distinguish between incapacity which affects only the degree of credibility and incapacity which excludes the witness entirely. The whole question is one of degree only, and the attempt to measure degrees and to define that point at which total incredibility ceases and credibility begins is an attempt to discover the intangible. The subject is not one which deserves to be brought within the realm of legal principle, and it is profitless to pretend to make it so. Here is a person on the stand; perhaps he is a total imbecile, in manner, but perhaps, also, there will be a gleam of sense here and there in his story. The jury had better be given the opportunity of disregarding the evidence nonsense and of accepting such sense as may appear. There is usually abundant evidence ready at hand to discredit him

when he is truly an imbecile or suffers under a dangerous delusion. It is simpler and safer to let the jury perform the process of measuring the impeached testimony and of sifting out whatever traces of truth may seem to be contained in it."

The jury, being fully apprised of the opinion of Dr. Richards, and being aware of the fact that Coleman had also been charged with the murder of Shelton, had more than adequate opportunity to assess the credibility to be attached to her testimony. Viewing that testimony as a whole, we conclude that the trial court did not err in permitting Coleman to testify.

■■■ Defendant also contends that the evidence failed to establish her guilt beyond a reasonable doubt of the crime of voluntary manslaughter, and that the evidence does not show beyond a reasonable doubt that defendant was not acting in self defense or in defense of Coleman. No instruction on justifiable use of force was tendered by defendant, and defendant objected to the instruction on that subject tendered by the People, he did not object to the instruction and forms of verdict relating to voluntary manslaughter. Defendant's trial counsel stated to the trial court that there was no evidence in the record to support a theory of self-defense.

A recitation, in this opinion, of the direct and circumstantial evidence which supports the jury's verdict would be of no precedential value. Coleman's testimony, together with that of other witnesses, is clearly sufficient to sustain the verdict.

Judgment affirmed.

TRAPP, P. J., and CRAVEN, J., concur.