THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
BENEDETTO J. MASSARELLA *et al.*, Defendants-Appellants.

First District (2nd Division)   No. 61346

Opinion filed December 18, 1979.—Rehearing denied February 8, 1980.

Julius Lucius Echeles, Frederick F. Cohn, and Carolyn Jaffe, all of Chicago, for appellants.

William J. Scott, Attorney General, and Bernard Carey, State's Attorney, both of Chicago (John F. Podliska, Assistant Attorney General, of counsel), for the People.

Mr. JUSTICE DOWNING delivered the opinion of the court:

On June 8, 1973, the Cook County grand jury returned a 49-count indictment for conspiracy, perjury, theft, and tax evasion against Benedetto J. Massarella (Massarella); Bee Jay's Truck Stop, Inc. (BJTS), a corporation of which Massarella was president and sole shareholder; Mideast Transport, Inc. (Mideast), a corporation controlled by Massarella; and several others. Prior to trial, all but five counts were dismissed. Massarella was found guilty by a jury of conspiracy, theft, and one count of perjury; sentenced to five years probation, including two years periodic imprisonment (for theft), and one to three years in the penitentiary (for perjury), both sentences to run concurrently; and ordered to pay a $10,000 fine and $425,407 in restitution to the State. BJTS was found guilty of conspiracy and theft; Mideast was found guilty of conspiracy. BJTS and Mideast were each sentenced to pay a $10,000 fine and ordered to pay $425,407 in restitution to the State of Illinois.

On appeal from these judgments and sentences, the defendants raised the following 15 issues for our review: (1) whether the indictment should have been dismissed due to the Attorney General's participation in the proceedings; (2) whether the court erred in refusing to dismiss the perjury count; (3) whether the State sustained its burden of proving Massarella guilty of perjury; (4) whether the State sustained its burden of

proving Massarella and BJTS guilty of theft; (5) whether the court erred in denying Massarella's motion for a substitution of judges; (6) whether the trial judge should have recused himself; (7) whether the trial court erred in denying the defendants' motion for a continuance; (8) whether the defendants were prejudiced by their joint trial on the conspiracy, theft, and perjury charges; (9) whether the defendants were denied a fair trial due to certain evidentiary rulings made by the trial court; (10) whether the defendants were denied a fair trial due to the prosecutor's closing argument; (11) whether the verdict forms finding Massarella and BJTS guilty of theft were sufficient; (12) whether the trial court adequately polled the jury upon the defendants' request; (13) whether the imposition of Massarella's two-year sentence of periodic imprisonment as a condition of five years probation was valid; (14) whether the trial court erred in imposing excessive and unlawful sentences upon all of the appealing defendants; and (15) whether Massarella was denied a fair hearing in aggravation and mitigation.

Finding that the indictment should have been dismissed due to the Attorney General's improper participation in the proceedings, we reversed the defendants' convictions without deciding the remaining issues raised on the appeal. (*People v. Massarella* (1977), 53 Ill. App. 3d 774, 368 N.E.2d 507.) The supreme court allowed the State's petition for leave to appeal (58 Ill. 2d R. 315), reversed our decision, and remanded the matter to us for consideration of the remaining unresolved issues (*People v. Massarella* (1978), 72 Ill. 2d 531, 382 N.E.2d 262).

The underlying facts giving rise to the 49-count indictment appear in our previous opinion (see 53 Ill. App. 3d 774, 775-78, 368 N.E.2d 507), and therefore will not be repeated here. Only those facts necessary to the resolution of the remaining 14 issues will be set forth as they are discussed in the opinion.

## I.

Count 3 of the indictment charged Massarella individually with perjury committed on or about August 26, 1971, to on or about August 30, 1971, in a related civil proceeding brought by BJTS entitled Bee Jay's Truck Stop, Inc. v. Illinois Department of Revenue, case no. 71 CH 3608, in the circuit court of Cook County.[1] In 1971, the statute prescribing the penalty for perjury provided that:

"A person convicted of perjury shall be fined not to exceed $1,000 or imprisoned in a penal institution other than the

---

[1] The disposition of BJTS's appeal from the decision in that proceeding appears in *Bee Jay's Truck Stop v. Department of Revenue* (1977), 52 Ill. App. 3d 90, 367 N.E.2d 173, *cert. denied* (1978), 435 U.S. 970, 56 L. Ed. 2d 61, 98 S. Ct. 1610.

penitentiary not to exceed one year or in the penitentiary from one to 14 years, or both fined and imprisoned." Ill. Rev. Stat. 1971, ch. 38, par. 32—2.

Due to the presence of the alternative penalty of imprisonment other than in the penitentiary in 1971, perjury was classified as a misdemeanor. (See *People v. Novotny* (1968), 41 Ill. 2d 401, 403, 244 N.E.2d 182.) The statute of limitations for all misdemeanors at that time was 18 months. (Ill. Rev. Stat. 1971, ch. 38, par. 3—5.) The indictment against Massarella was returned on June 8, 1973, approximately 22 months after the perjury was allegedly committed.

However, the Unified Code of Corrections took effect on January 1, 1973, approximately one month before the 1971 18-month statute of limitations expired in February 1973. (Ill. Rev. Stat. 1973, ch. 38, par. 1008—6—1.) The Unified Code reclassified perjury as a Class 3 felony (Ill. Rev. Stat. 1973, ch. 38, par. 32—2(d)) carrying a maximum term in excess of one year and not exceeding 10 years (Ill. Rev. Stat. 1973, ch. 38, par. 1005—8—1(b)(4)), and extended the statute of limitations for perjury to three years (Ill. Rev. Stat. 1973, ch. 38, par. 3—5(b)). Therefore, under the Unified Code, the indictment charging Massarella with perjury committed in 1971 was timely brought.

Massarella contends that the reclassification of perjury from a misdemeanor to a felony as applied to him violates the *ex post facto* laws of the Illinois and Federal constitutions. (Ill. Const. 1970, art. I, §16; U. S. Const., art. I, §9.) From this premise, Massarella argues that the indictment was barred by the 18-month statute of limitations in force in 1971, and, therefore, the trial court erred in refusing to dismiss the perjury count.

■■ A legislative body can extend the period of limitations as to criminal offenses which occurred prior to the effective date of the change without violating the constitutional prohibitions against *ex post facto* laws, so long as the extended period does not apply to any case in which the accused has acquired, as of the effective date of the change, a right to acquittal through the running of the original statute. (*People v. Anderson* (1973), 53 Ill. 2d 437, 440, 292 N.E.2d 364.) In *People v. Liebling* (1976), 36 Ill. App. 3d 1073, 344 N.E.2d 520, this court held that the legislature's reclassification of conspiracy and bribery from misdemeanors to felonies prior to the expiration of the 18-month statute of limitations and the extension of that statute of limitations to three years did not violate the *ex post facto* doctrine. (*Liebling,* 36 Ill. App. 3d 1073, 1077.) However, Massarella argues that *Liebling* is inapplicable because there the defendant did not argue that the very change in the nature of the offense was barred by the *ex post facto* doctrine. We disagree.

■■ Since Massarella's trial occurred subsequent to the effective date of

the Unified Code of Corrections, he was entitled to be sentenced either under the law in effect at the time of the offense or the law at the time of the trial. (See *Liebling*, 36 Ill. App. 3d 1073, 1076.) Massarella elected to be sentenced under the Unified Code of Corrections and received a sentence of one to three years in the penitentiary. The constitutional prohibition against *ex post facto* laws is not violated if the defendant is given the option of being sentenced in accordance with the law as it exists at the time of sentencing or as it existed when the offense was committed. (See *Liebling*, 36 Ill. App. 3d 1073, 1076-77.) Moreover, although it is the general rule that punishment for an offense cannot be increased by an amendatory act taking effect after the offense has been committed without violating the *ex post facto* doctrine (*People v. Wyckoff* (1969), 106 Ill. App. 2d 360, 364, 245 N.E.2d 316), the criterion for determining the lesser penalty is the actual term of imprisonment imposed (*People v. Zboralski* (1975), 33 Ill. App. 3d 912, 913, 338 N.E.2d 925). Massarella's sentence of one to three years in the penitentiary did not exact a penalty greater than that permissible under the 1971 statute classifying perjury as a misdemeanor.

For the foregoing reasons, we find that the trial court did not err in refusing to dismiss the perjury indictment against Massarella.

## II.

During the course of the aforementioned civil proceeding wherein Massarella sought to enjoin the Department of Revenue from investigating him individually and his business BJTS, Massarella testified that he had bought no diesel fuel from co-defendant Mid-Town Petroleum, Inc. (Mid-Town),[2] prior to January 1971, and that up to December 1970, all of this diesel fuel was supplied by Humble Oil Company. He further testified that he never made purchases of diesel fuel through Rella Enterprises, a sole proprietorship which Massarella owned. Count 3 of the indictment charged that these statements were perjurious. The perjury statute defined the offense as one in which a person under oath at a proceeding makes a false statement material to the issue or point in question, which he does not believe to be true. (Ill. Rev. Stat. 1971, ch. 38, par. 32—2(a).) Massarella contends that the evidence of perjury was insufficient absent any showing that his statements were material, absent proof of falsity, and absent proof of his state of mind. We disagree.

Materiality is a question of law for the court to decide. (*People v. Berry* (1923), 309 Ill. 511, 515, 141 N.E. 132.) However, there is no authority to support the defendant's novel suggestion that, to permit meaningful appellate review, the trial court must make a finding of materiality. An indictment may show the materiality of the testimony on

---

[2] Co-indictee Mid-Town pleaded guilty to conspiracy to commit theft.

which the perjury is assigned either by setting forth the issue and the sworn statement, or by stating the particular testimony charged to be false, with the allegation that such testimony is material. *People v. Berry* (1923), 309 Ill. 511, 513-14.

■ Contrary to Massarella's sole contention with respect to the sufficiency of the evidence showing the materiality of his allegedly perjurious statements, a certified and exemplified copy of the pleadings and orders in Bee Jay's Truck Stop, Inc. v. Illinois Department of Revenue, case no. 71 CH 3608, as well as the entire transcript from those proceedings, was received into evidence without objection and upon stipulation of the parties. The issue in the civil proceeding was whether there was a factual basis for the Department's investigation of Massarella's alleged theft and evasion of State motor fuel tax through the diversion of untaxed diesel fuel to BJTS. We therefore further find that the trial court had before it sufficient evidence to properly determine that Massarella's statements were material to the issue of Massarella's alleged guilt of theft. *Cf. People v. Harris* (1968), 102 Ill. App. 2d 335, 242 N.E.2d 782.

The perjury statute also required the State to prove that these statements were false. (See Ill. Rev. Stat. 1971, ch. 38, par. 32—2(a).) Relying on *Bronston v. United States* (1973), 409 U.S. 352, 34 L. Ed. 2d 568, 93 S. Ct. 595, Massarella contends that his testimony was at most evasive, unresponsive, or untrue only by false negative implications, but were not false. In *Bronston*, the Supreme Court held that the Federal perjury statute does not reach a statement that is literally true and complete, but unresponsive, even if the witness intended to mislead the court. (*Bronston*, 409 U.S. 352, 357-62, 34 L. Ed. 2d 568, 573-76, 93 S. Ct. 595, 599-602.) Massarella contends that the Illinois perjury statute should be interpreted as the Federal perjury statute has been interpreted. We need not determine that question, for the record of the civil proceeding shows that the questions posed to Massarella and his answers thereto were clear, concise, and direct. Moreover, in the instant trial, Raymond Battersby,[3] the president and principal shareholder of Mid-Town, testified that pursuant to an agreement personally solicited by Massarella in the summer of 1967, Mid-Town sold Massarella and BJTS several million gallons of diesel fuel from August 1967 to December 1970. Battersby also admitted that he lied in the civil proceeding when he denied selling untaxed diesel fuel to BJTS. James Peterson of the Peterson Oil Company testified that he sold Massarella and Rella Enterprises several million gallons of diesel fuel from February 1969 to May 1971. Gino Fortuna and Earl Pruitt, employees of Massarella and BJTS, and Louis Wright, testified that this fuel was delivered to BJTS. A comparison

---

[3] Co-indictee Battersby pleaded guilty to conspiracy to commit theft and to perjury.

of this and other testimony presented in the State's case with Massarella's testimony in the civil proceeding shows that his testimony was neither unresponsive nor literally true, but rather was patently false. In light of the patent falsity of his testimony, there can be little doubt that Massarella knew his testimony to be false.

### III.

Count 6 of the indictment charged BJTS, a corporation, and Massarella, individually and as president of BJTS, with the theft of motor fuel tax monies of the State of Illinois in excess of $150, committed from June 11, 1970, to May 31, 1971. (Ill. Rev. Stat. 1971, ch. 38, par. 16—1(a)(1).) These defendants contend that the State failed to sustain its burden of proving them guilty of this offense.

● 7-9 It is uncontroverted that the county in which the alleged crime was committed is a material averment and must be proved beyond a reasonable doubt. (*People v. White* (1975), 26 Ill. App. 3d 659, 661, 325 N.E.2d 313.) The indictment charged that the defendants' theft of the State tax monies occurred in Cook County. The defendants first contend that since the alleged offense was exactly comparable to embezzlement, venue could properly lie only in Sangamon County, Illinois, the site of the State capitol and the office of the Department of Revenue of the State of Illinois. (See *People v. Kopman* (1934), 358 Ill. 479, 485, 193 N.E. 516.) We find the defendants' argument to be without merit insofar as they were neither charged with embezzlement nor with the violation of the Motor Fuel Tax Law. (Ill. Rev. Stat. 1971, ch. 120, par. 417-34)[4] Rather, the defendants were charged with the separate and distinct offense of theft. A person who commits theft of property may be tried in any county in which he exerted control over such property. (Ill. Rev. Stat. 1971, ch. 38, par. 1—6(g).) Venue, like other facts necessary to prove the commission of an offense, may be established by circumstantial evidence. *People v. Allen* (1952), 413 Ill. 69, 76, 107 N.E.2d 826.

■■ The evidence shows that the defendants obtained several million gallons of tax-free motor fuel, that BJTS had six diesel pumps which pumped diesel fuel into diesel tractors, and that the charge that was made at all six pumps included motor fuel tax. The evidence further shows that in 1970 the diesel pumps at BJTS displayed a decal which stated that Illinois motor fuel tax of 7½ cents per gallon was included in the cost of the product. When the Illinois motor fuel tax increased from 6 cents to 7½ cents per gallon in 1969, the pump price of the diesel fuel at BJTS

---

[4] We note that venue in Cook County for a violation of the Motor Fuel Tax Law may be shown by proof that the Department of Revenue maintained an office for the payment of State motor fuel tax in Cook County. (See *People v. Allen* (1935), 360 Ill. 36, 42-43, 195 N.E. 478.) An accountant for the Department of Revenue responded affirmatively when asked, "Does the Illinois Department of Revenue maintain office payments [*sic*] of state motor fuel taxes in Cook County?"

increased from 24 cents to 25½ cents per gallon. BJTS was located at 970 Pershing Road in Chicago, Cook County, Illinois, and was licensed by the city of Chicago. We are of the opinion that the only rational conclusion that can be drawn from the evidence is that the defendants obtained and exerted control over the State motor fuel tax monies in Cook County as alleged in the indictment. (See *People v. Mowry* (1955), 6 Ill. 2d 132, 139-40, 126 N.E.2d 683.) Venue was properly established, and we are satisfied that the State's burden of proof of theft was sustained beyond a reasonable doubt.

## IV.

On June 12, 1973, Massarella appeared before the presiding judge of the criminal division for arraignment and pleaded not guilty to the charges in the indictment. On June 15, 1973, the remaining defendants were arraigned and the cause was assigned to the Honorable Marvin E. Aspen and continued to July 18, 1973, on which date Massarella filed a written verified motion supported by his affidavit for a substitution of judges pursuant to section 114—5 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1973, ch. 38, par. 114—5). The next day the court ruled initially that the motion was not timely filed within 10 days of being placed on the trial call as provided by statute (Ill. Rev. Stat. 1973, ch. 38, par. 114—5(a)), so as to entitle defendant to an automatic order of substitution of judges, but permitted the motion to be amended as one pursuant to subsection (c), and proceeded to hold a hearing on the merits of the amended motion. Massarella assigns error to the court's initial ruling as to the timeliness of the first motion and its denial of the amended motion.

Section 114—5 of the Code of Criminal Procedure provides in pertinent part:

"(a) Within 10 days after a cause involving only one defendant has been placed on the trial call of a judge the defendant may move the court in writing for a substitution of judge or any 2 judges on the ground that such judge or judges are so prejudiced against him that he cannot receive a fair trial. Upon the filing of such a motion the court shall proceed no further in the cause but shall transfer it to another court or judge not named in the motion.

* * *

(c) * * * [A]ny defendant may move at any time for substitution of judge for cause, supported by affidavit. Upon the filing of such motion the court shall conduct a hearing and determine the merits of the motion." Ill. Rev. Stat. 1973, ch. 38, par. 114—5.

Early cases interpreting this statute held that to obtain a mandatory

substitution of judges under section 114—5(a), a defendant must file a motion alleging prejudice within 10 days after the case has been placed on the trial call of the trial judge, and that a case is on the trial call of the trial judge when it is so assigned. (See *People v. Wolfe* (1970), 124 Ill. App. 2d 349, 354, 260 N.E.2d 424; *People v. Ethridge* (1966), 78 Ill. App. 2d 299, 302, 223 N.E.2d 437.) However, more recent cases have liberally interpreted this statute—so as to permit rather than deny a substitution—to hold that such motion is timely filed under this section when filed within 10 days of the date the defendant could be charged with knowledge of the assignment of the case to the trial judge. See *People v. Thomas* (1978), 58 Ill. App. 3d 460, 462, 374 N.E.2d 795; *People v. Oatis* (1979), 69 Ill. App. 3d 736, 741, 387 N.E.2d 1052.

■■ Massarella does not contend that he first had knowledge of the assignment of the case to Judge Aspen on July 18, 1973, but rather contends that the motion should have been allowed as of right since it was filed on the first date the case was before Judge Aspen, and before the judge had made any substantive rulings in the case. (*People v. Kostos* (1961), 21 Ill. 2d 451, 173 N.E.2d 469; *People v. Howell* (1974), 16 Ill. App. 3d 989, 993, 307 N.E.2d 172, *aff'd* (1975), 60 Ill. 2d 117, 324 N.E.2d 403; *People v. Evans* (1971), 1 Ill. App. 3d 158, 273 N.E.2d 71.) It is clear that a motion for the substitution of judges filed after the court has ruled on a substantive issue in the case is untimely because to hold otherwise would allow counsel to first ascertain the attitude of the trial judge on the hearing on that substantive issue, and then to assert the court's adverse judgment on that issue as a ground for allowing the substitution. (See *People v. Chambers* (1956), 9 Ill. 2d 83, 86-87, 136 N.E.2d 812, *cert. denied* (1959), 359 U.S. 972, 3 L. Ed. 2d 839, 79 S. Ct. 888 (construing Ill. Rev. Stat. 1953, ch. 146, pars. 21, 25, 26, and cited in *Evans* and *Kostos*); *Howell*, 16 Ill. App. 3d 989, 993.) However, the cases cited by the defendant do not support his argument that the converse of this rule extends the time for filing the motion, *i.e.*, that the motion may be filed at any time, regardless of when the defendant could be charged with knowledge of the assignment of the case to the trial judge, as long as it was filed before a substantive issue had been ruled on.

Relying on *Chambers* and *People v. Norcutt* (1970), 44 Ill. 2d 256, 255 N.E.2d 442, the defendant in *People v. Bean* (1974), 17 Ill. App. 3d 377, 308 N.E.2d 334, made the same argument that Massarella urges. There, we said:

"The *Norcutt* and *Chambers* cases are the culmination of a long series of Illinois decisions which by judicial interpretation engrafted an exception onto our present and preceding statutes dealing with mandatory substitution of judges. These cases in effect hold that a motion for a mandatory substitution of judges not only

must be made within the time period provided by statute but must also be made prior to the trial court's indicating in any way its views as to the merits of the case. The defendant, by isolating the judicial exception to the time provision of subsection (a), attempts the argument that a restrictive exception to the general rule is in fact a liberalization of it. Such a reading of *Norcutt* and *Chambers* flies in the face of the plain language of the statute. * * * The denial of that portion of the defendant's motion as untimely was fully justified." *Bean*, 17 Ill. App. 3d 377, 381.

We agree with the foregoing interpretation of section 114—5(a), and, therefore, find that the denial of Massarella's motion made pursuant to that section was proper.

Alternatively, Massarella contends that the court erred in not granting the motion for cause under section 114—5(c). The defendant contends that the "astronomical figures" involved in the case, the Honorable Samuel B. Epstein's statement in the civil proceeding that he might have granted the defendant's injunction against the Department of Revenue if the State were not a party, and Judge Aspen's prior recusal from a case involving a politically prominent public official and his pending re-election, constituted reasonable grounds not only for the defendant to fear that he could not get a fair trial before Judge Aspen, but also for the judge to grant the motion even if he candidly believed he could and would be fair.

It is clear that the mere fact that the defendant fears that a judge is prejudiced against him is insufficient cause to grant a motion for substitution. (See *People v. Peter* (1973), 55 Ill. 2d 443, 458, 303 N.E.2d 398, *cert. denied* (1974), 417 U.S. 920, 41 L. Ed. 2d 225, 94 S. Ct. 2627.) The statements attributed to Judge Epstein are not to be found in the record. Nor does the record establish the basis for the alleged "political" theory. The only reference before the court in July 1973 when the motion was denied as to the dollar amounts in issue was that they exceeded $150. Under these circumstances, we find the evidence insufficient to support the defendant's charge of prejudice warranting a substitution of judges.

## V.

Massarella next argues that in the course of accepting guilty pleas from three co-defendants prior to trial, the trial judge necessarily heard factual reasons for the pleas which caused a bias and prejudice against him. He therefore contends that the trial judge erred in failing to recuse himself *sua sponte*.

■■ While it cannot be disputed that in a criminal trial a judge's hostile attitude toward the defendant, or his witnesses, is apt to prejudicially

influence the jury in arriving at its verdict (see *People v. Marino* (1953), 414 Ill. 445, 111 N.E.2d 534), and that it may be better for a judge to recuse himself when he learns that a plea of guilty has been offered (*United States v. Walker* (D. C. Cir. 1972), 473 F.2d 136, 138), a trial judge is under no duty to recuse himself even from a bench trial because he presided at the trial of co-defendants (see *People v. Smith* (1965), 32 Ill. 2d 88, 93-94, 203 N.E.2d 879; *People v. Smith* (1975), 29 Ill. App. 3d 519, 331 N.E.2d 99, *cert. denied* (1976), 424 U.S. 925, 47 L. Ed. 2d 334, 96 S. Ct. 1137 (abstract)), or even because he presided at a prior trial of the same defendant in the same cause (see *United States v. Dichiarinte* (7th Cir. 1971), 445 F. 2d 126, 132).

■■ Moreover, the alleged bias or prejudice of a trial judge to be disqualifying must be shown to have stemmed from an extra-judicial source and result in an opinion on the merits on some basis other than what the judge learned from his participation in the case. (*United States v. Grinnell Corp.* (1966), 384 U.S. 563, 583, 16 L. Ed. 2d 778, 793, 86 S. Ct. 1698.) In the instant case there is no affirmative showing that the trial judge considered information gleaned from the co-defendants' plea hearings during the course of Massarella's trial. (See *People v. Teller* (1977), 45 Ill. App. 3d 410, 417, 359 N.E.2d 803.) The alleged erroneous rulings and findings made by the trial judge in the course of the trial asserted by Massarella are not in themselves sufficient reasons to believe that the judge had a personal bias or prejudice for or against him (see *United States v. English* (7th Cir. 1974), 501 F.2d 1254, 1263, *cert. denied sub. nom. Hubbard v. United States* (1975), 419 U.S. 1114, 42 L. Ed. 2d 811, 95 S. Ct. 791), for due process of law is not a guaranty against erroneous rulings or decisions (*People v. Hicks* (1970), 44 Ill. 2d 550, 557, 256 N.E.2d 823, *cert. denied* (1970), 400 U.S. 845, 27 L. Ed. 2d 81, 91 S. Ct. 90). In the absence of any further evidence to support the defendant's charge of prejudice and bias, we cannot say that the trial court erred in failing to recuse himself, or that his failure to do so deprived the defendant of a fair trial in accordance with due process of law.

## VI.

In October 1974, three days after several co-indictees and their respective corporations pleaded guilty, Massarella sought to discharge his two privately retained counsel, Bernard Brody and Sidney Goldstein, who had represented the defendant in the matter since the arraignment in June of 1973. Massarella sought to substitute Junie Sinson, an attorney whom he had first contacted 48 hours before. When Mr. Sinson appeared in court on October 18, 1974, he indicated that due to the complexity of the case he could not substitute unless he were granted a continuance to prepare. Neither Brody nor Goldstein moved to withdraw, moved for a

continuance, nor represented to the court that the co-defendants' guilty pleas had so altered the case that they were not prepared to go to trial. The trial date of October 15, 1974, had been set by the court on May 23, 1974, to enable counsel to prepare for trial, to allow both counsel and the court to clear their calendars, and to enable the State to issue interstate witness subpoenas. In light of these factors the trial court agreed to permit Sinson to file an appearance, but denied his motion for a continuance. Sinson filed no appearance, and Brody and Goldstein continued to represent the defendants throughout the plea negotiations and the trial which began on October 21. The defendant contends that the court, in denying his motion for a continuance and thus preventing the substitution of counsel, deprived him of his constitutional right to the effective assistance of counsel of his choice.

■■ While we do not dispute that the constitutional right to counsel is fundamental and necessarily includes the right to counsel with adequate time to prepare (see *Gideon v. Wainwright* (1963), 372 U.S. 335, 342-43, 9 L. Ed. 2d 799, 804, 83 S. Ct. 792; *People v. Blumenfeld* (1928), 330 Ill. 474, 489, 161 N.E. 857; *People v. Miller* (1971), 131 Ill. App. 2d 212, 217, 268 N.E.2d 213), the defendant's right to counsel of his own choosing is not absolute, and a substitution of counsel may be denied if it will unduly prejudice the opposing party or interfere with the prompt administration of justice by inordinately delaying the trial (see *People v. McNeil* (1972), 53 Ill. 2d 187, 197-98, 290 N.E.2d 602). Moreover, the granting of a continuance to permit a substitution of counsel for preparation for a case necessarily depends on the particular facts and circumstances surrounding the request, and is a matter resting within the sound judicial discretion of the trial court. (*People v. Surgeon* (1958), 15 Ill. 2d 236, 239, 154 N.E.2d 253; *People v. Clark* (1956), 9 Ill. 2d 46, 49, 137 N.E.2d 54, *cert. denied* (1957), 352 U.S. 1002, 1 L. Ed. 2d 546, 77 S. Ct. 559.) A trial court's refusal to grant a motion for a continuance will ordinarily not be disturbed on appeal without some showing of a clear abuse of discretion. (*People v. Hayes* (1972), 52 Ill. 2d 170, 175, 287 N.E.2d 465; *People v. Brooks* (1976), 39 Ill. App. 3d 983, 986, 350 N.E.2d 821.) Unless it appears that the refusal to grant a continuance embarrassed the defendant in preparing his defense or prejudiced his rights, the conviction should be affirmed. *People v. Canaday* (1971), 49 Ill. 2d 416, 427, 275 N.E.2d 356; *People v. Allen* (1976), 35 Ill. App. 3d 342, 347, 341 N.E.2d 431.

■■ The record in the instant case does not reflect that Massarella ever expressed any dissatisfaction with his two privately retained counsel·who had represented him since the inception of the case. Although a large portion of the State's case rested on co-defendant Battersby's testimony, who had pleaded guilty to conspiracy to commit theft and to perjury, neither of the defendant's retained counsel asserted at trial that either his

plea or his subsequent testimony so altered the case that they were not prepared to proceed. Nor is there anything in the record to support the defendant's fear that his counsel may have inadvertently divulged matters concerning his defense to counsel for the guilty-pleading co-defendants. On the other hand, given Mr. Sinson's apparent unfamiliarity with this complex trial which the trial court expected to last for over two months, the length of the continuance needed for Mr. Sinson's preparation would have inordinately delayed an already lengthy trial and would have forced the State to re-issue 15 interstate witness subpoenas. Although we recognize that the protection of the defendant's rights are paramount to the efficient administration of justice, we do not believe that the record shows that the defendant's rights were in any way prejudiced by the trial court's denial of the continuance. Therefore, we find no clear showing that the trial court abused its discretion in denying the defendant's motion.

## VII.

Massarella next contends that the trial court erred in denying his motion to sever the perjury counts from the remaining counts for trial pursuant to section 114—8 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1973, ch. 38, par. 114—8). We have previously determined that the trial court did not err in refusing to dismiss the perjury counts. However, Massarella also contends that the joinder of the perjury count with the conspiracy and theft counts (1) eliminated the possibility of his choosing to testify on less than all of the charges (*Cross v. United States* (D. C. Cir. 1964), 335 F. 2d 987); (2) adversely affected the credibility of his testimony due to the fact that the jurors were aware that the grand jury believed he had lied under oath on two previous occasions;[5] and (3) prejudiced his rights due to the fact that the jurors heard evidence of several distinct offenses at a single trial (*United States v. Carter* (D. C. Cir. 1973), 475 F.2d 349; *Drew v. United States* (D. C. Cir. 1964), 331 F. 2d 85).

■■ ■ As to Massarella's first contention, we note that his severance motions at trial made no reference to a desire to testify on less than all of the charges, or that his testimony on the perjury charge would self-incriminate him on the remaining charges. (*Cf. Cross*, 335 F.2d 987, 990.) No need for a severance exists until the defendant makes a convincing showing that he had both important testimony to give concerning one count and a strong need to refrain from testifying on the other counts, because in the absence of such a showing, the court is unable to determine if the claim is genuine and to intelligently weigh the considerations of economy and expedition of judicial administration against the

[5] Massarella was found not guilty of one charge of perjury.

defendant's interest in having a free choice with respect to testifying. (*Baker v. United States* (D. C. Cir. 1968), 401 F.2d 958, 977, *cert. denied* (1970), 400 U.S. 965, 27 L. Ed. 2d 384, 91 S. Ct. 367.) Defendant's failure to specifically set forth this ground for severance before the trial court precludes him from raising it in this court. See *People v. Jackson* (1972), 4 Ill. App. 3d 698, 702-03, 281 N.E.2d 373.

● 18 The defendant cites no authority for his second contention that the trial court's refusal to grant a severance of the charges was prejudicial because the petit jurors were aware that the grand jurors had believed that he had lied under oath on two other occasions. However, this same argument was raised and rejected by the courts in *United States v. Pacente* (7th Cir. 1974), 503 F.2d 543, *cert. denied* (1974), 419 U.S. 1048, 42 L. Ed. 2d 642, 95 S. Ct. 623, and *United States v. Isaacs* (7th Cir. 1974), 493 F.2d 1124, *cert. denied* (1974), 417 U.S. 976, 41 L. Ed. 2d 1146, 94 S. Ct. 3183-84. As in *Isaacs*, defendant Massarella voluntarily appeared in the suit instituted by him in which he allegedly gave the perjurious testimony. That testimony related to Massarella's involvement in the scheme to divert tax monies from the State through the sale of untaxed diesel fuel. The perjury, conspiracy, and theft charges all have a logical relationship to that scheme. On the basis of the foregoing cases and facts, we reject the defendant's second contention. See *Pacente*, 503 F.2d 543, 545-49; *Isaacs*, 493 F.2d 1124, 1159-60.

It is a principle of long standing in our law that evidence of one crime is inadmissible to prove disposition to commit another crime, from which the jury may infer that the defendant committed the crime charged. (1 Wigmore, Evidence §192-94 (3d ed. 1940); McCormick, Evidence §190 (2d ed. 1972).) The defendant contends that the joinder of the perjury charge with the remaining charges improperly permitted evidence of the former charge to be heard by the jury, and that such evidence prejudiced his rights. However, as stated by the court in *Drew*:

> "If, * * *, the evidence of each of the crimes on trial would be admissible in a separate trial for the other, the possibility of 'criminal propensity' prejudice would be in no way enlarged by the fact of joinder. When, for example, the two crimes arose out of a continuous transaction or the same set of events, the evidence would be independently admissible in separate trials." *Drew*, 331 F.2d 85, 90.

■■ Evidence of other crimes is admissible when relevant to prove motive, intent, the absence of mistake or accident, a common scheme or plan embracing the commission of two or more crimes to related to each other that the proof of one tends to establish the other. (*Drew*, 331 F.2d 85, 90.) Massarella instituted the civil proceeding to enjoin the Department of Revenue from investigating his activities and those of BJTS.

It is clear from the record of that proceeding that the Department's investigation related to the theft and evasion of State motor fuel tax. It was in that proceeding that Massarella perjured himself when testifying as to the sources of his diesel fuel prior to 1970 and as to his purchase of such fuel through Rella Enterprises. We are of the opinion that this perjurious testimony was admissible to show a particular plan or scheme by which the conspiracy and theft offenses were committed. We also believe that this evidence tends to prove the absence of mistake or inadvertence in committing the subsequent offenses, for if such had been the case Massarella would have had no reason to perjure himself. For the foregoing reasons, we find no error in the trial court's refusal to grant the defendant's motion for severance of the charges.

## VIII.

Defendants next contend that they were deprived their constitutional rights to a fair trial in accordance with due process of law and to confront the witnesses against them where the court: (1) limited the evidence sought to be presented by a defense expert witness, (2) excluded evidence of conversations between defendant Massarella and his accountant, (3) applied the best evidence rule to exclude some of the defense's evidence, (4) limited the cross-examination of four of the State's witnesses, (5) allowed into evidence the statements of an alleged co-conspirator, and (6) allowed into evidence the testimony of a deceased witness given at the prior civil proceeding. Having carefully reviewed the record and the authorities cited by the defendants, we find no merit in these contentions and no necessity to discuss them here.

## IX.

The defendants also complain of the prosecutor's reference in his closing argument to the defendants' failure to call two witnesses and the court's ruling on the defendants' objections thereto, of the verdict forms for the theft charges, and of the manner in which the jury was polled. The record shows that the defendants invited the prosecutor's explanation of the absence of the witnesses and of the defendants' ability to call them. Therefore, we find that the prosecutor's argument was within proper bounds. (See *People v. McElroy* (1964), 30 Ill. 2d 286, 291-92, 196 N.E.2d 651; *People v. Wheeler* (1955), 5 Ill. 2d 474, 485-86, 126 N.E.2d 228.) Furthermore, the verdict form proffered by the State, without objection by the defendants, was Illinois Pattern Jury Instructions, Criminal, No. 26.05 (1968) (hereafter IPI). Since Supreme Court Rule 451 (Ill. Rev. Stat. 1973, ch. 110A, par. 451) prescribes the use of the applicable IPI criminal instruction where possible, we find no merit in the defendants' second complaint. (See *People v. Padget* (1974), 21 Ill. App.

3d 426, 430, 315 N.E.2d 646.) Finally, there is nothing in the record to show that the defendants or their attorneys objected at trial to the manner in which the jury was polled, or sought a more extensive poll. Moreover, the jurors' responses indicate that there was no hint of dissent from the verdicts, although the questions posed to the jurors gave them ample opportunity to do so. Under these circumstances, we do not believe the trial court abused its discretion in polling the jury as it did.

## X.

Section 5—4—1 of the Unified Code of Corrections (Ill. Rev. Stat. 1973, ch. 38, par. 1005—4—1) states in pertinent part:

"(a) After a determination of guilt, a hearing shall be held to impose the sentence. At the hearing the court *shall*:

\* \* \*

(3) *consider* evidence and information offered by the parties in aggravation and mitigation; \* \* \*." (Emphasis added.)

On January 8, 1975, following the jury's finding of guilt, the trial court held a hearing on aggravation and mitigation in which defendant Massarella presented evidence in mitigation. At the conclusion of the hearing, the trial judge presented counsel with a lengthy written sentencing memorandum order dated January 8, 1975. Defendant Massarella now contends that due to the alleged prior preparation of the sentencing order, the trial court did not consider the evidence presented in mitigation by the defendant.

At the outset we note that Massarella failed to object to this procedure in the trial court. Therefore, he is deemed to have waived his right to assert any prejudice on appeal. (See *People v. Dixon* (1971), 2 Ill. App. 3d 279, 284, 276 N.E.2d 42.) However, even assuming that defendant's argument was properly before this court, our review of the record does not persuade us that the trial court did not in fact consider the evidence presented in the hearing on mitigation. During the hearing the trial judge stated that he had considered carefully letters of recommendation and had reviewed carefully the background of the defendant which he gleaned "not only during the course of the trial but also as part of the pre-sentence reports as part of Mr. Rocco's hearing presentation on mitigation." The order contains a thorough, reasoned statement of the sentences as to each defendant and the grounds for them. Handwritten additions and changes were made on the order. The defendant has presented no other evidence, other than the date on the order, to support his contention that the trial judge did not consider the evidence in mitigation. Under these circumstances, we find no basis to support his contention.

## XI.

For the crime of theft, Massarella was sentenced to five years' probation, two years periodic imprisonment, the payment of a $10,000 fine, and the payment of $427,407 restitution to the State of Illinois. He was ordered to serve his sentence of periodic imprisonment in the Cook County Department of Corrections where he was to be incarcerated, "provided that he may be released for short periods of time on petition of this Court in order that he may take steps to facilitate the restitution terms of this order." Massarella was further ordered to commence immediately to sell his business assets in order to pay the restitution and fine. Massarella contends that (1) his sentence of two years periodic imprisonment as a condition of five years probation was an impermissible imposition of two years incarceration, and (2) that under section 5—7—1 of the Unified Code of Corrections (Ill. Rev. Stat. 1973, ch. 38, par. 1005—7—1) periodic imprisonment could not be imposed along with an indeterminate penitentiary sentence of one to three years for perjury.

As to the defendant's first contention, it is clear that the trial court had the authority to require Massarella to serve a term of periodic imprisonment as a condition of probation. (See Ill. Rev. Stat. 1973 ch. 38, par. 1005—6—3(b)(1).) A sentence of periodic imprisonment is a sentence of imprisonment during which the committed person may be released for periods of time during the day or night,or for periods of days, or both. (Ill. Rev. Stat. 1973, ch. 38, par. 1005—7—1(a).) Such a sentence of periodic imprisonment may be imposed to permit the defendant to conduct a business or for any other purpose determined by the court. (Ill. Rev. Stat. 1973, ch. 38, par. 1005—7—1(b)(3)(7).) We find the trial court's sentence of periodic imprisonment to be consonant with the foregoing provisions of the Unified Code of Corrections.

Section 5—7—1 follows and expands the former work-release statute for Illinois jails. (Ill. Rev. Stat. 1971, ch. 75, pars. 35 to 41 (repealed); Ill. Ann. Stat., ch. 38, par. 1005—7—1, Council Commentary, at 452 (Smith-Hurd 1973).) While under the former law only misdemeanants were allowed work-release status, subparagraph (c) of section 5—7—1 also permits periodic imprisonment to be imposed for a felony. Subparagraph (c) also provides that, "The court shall not impose a sentence of periodic imprisonment if it imposes a sentence of imprisonment upon the defendant." Without other citation of authority, the defendant contends that this section of the Code precludes the imposition of periodic imprisonment for the offense of theft in addition to the indeterminate penitentiary sentence of one to three years for the offense of perjury. We disagree.

Although our research has revealed no cases dealing with this precise

issue, several other sections of the Code persuade us that the defendant's construction of section 5—7—1 is erroneous. Section 5—7—2 dealing with the modification and revocation of a sentence of periodic imprisonment provides that:

> "That part of the term under paragraph (d) of Section 5—7—1 which has been served under the sentence of periodic imprisonment shall be credited against a sentence of imprisonment." (Ill. Rev. Stat. 1973, ch. 38, par. 1005—7—2.)

Moreover, section 5—7—8 provides that:

> "(a) The service of an indeterminate sentence of imprisonment shall satisfy any sentence of periodic imprisonment which was imposed on an offender for an offense committed prior to the imposition of the indeterminate sentence. An offender who is serving a sentence of periodic imprisonment at the time an indeterminate sentence of imprisonment is imposed shall be delivered to the custody of the Department of Corrections to commence service of the indeterminate sentence immediately." (Ill. Rev. Stat. 1973, ch. 38, par. 1005—7—8.)

These sections of the Code allowing the crediting and merger of a periodic sentence of imprisonment into a sentence of imprisonment suggest to us that the imposition of a sentence of periodic imprisonment for one offense and a sentence of imprisonment for another distinct and separate second offense is permissible. Therefore, we believe that section 5—7—1(c) must be construed only to preclude the imposition of a sentence of periodic imprisonment and a sentence of imprisonment for a single offense. Since in the instant case the sentence of periodic imprisonment was imposed as a condition of probation for the offense of theft and the indeterminate penitentiary sentence of one to three years was imposed for the defendant's perjury conviction, we find section 5—7—1(c) inapplicable and the defendant's argument without merit.

## XII.

Defendant Massarella urges that the trial court was without authority to order restitution of $425,407 as a condition of his probation for theft, and that his one- to three-year penitentiary sentence for perjury was excessive and inconsistent considering his background and the sentence of three years conditional discharge and $1,000 fine imposed on co-defendant Battersby upon his plea of guilty to perjury.

■■ As to Massarella's first contention, we find his reliance on Federal income tax evasion cases misplaced insofar as he was convicted of theft, not tax evasion. Moreover, section 5—6—3(b)(10) of the Unified Code of Corrections expressly empowers the court to make as a condition of probation the "restitution or reparation in an amount not to exceed actual

loss or damage to property and pecuniary loss * * * [and to] determine the amount and conditions of payment." A review of the record and exhibits introduced shows that the amount of disputed tax monies was subject to accurate computation and that the evidence supported the specific amount of restitution ordered.

Massarella was sentenced to one to three years in the penitentiary and fined $10,000 for perjury while co-defendant Battersby received a sentence of three years conditional discharge and a $1,000 fine. Massarella contends that this disparity of the sentences imposed demonstrates that he was punished for proceeding to trial rather than joining Battersby in his guilty plea. We find this claim without merit.

██ A reviewing court should not disturb a sentence within the statutory range on the mere allegation that it was imposed because a defendant demanded a trial. (*People v. Perry* (1971), 47 Ill. 2d 402, 408, 266 N.E.2d 330.) That fact must be clearly established by evidence and should not be inferred merely because a defendant received a higher sentence than a defendant who pleaded guilty. (*People v. Perry* (1971), 47 Ill. 2d 402, 408-09.) Mere disparity between the sentences imposed on Massarella, who stood trial, and Battersby, who pleaded guilty, does not of itself require action by this court. (See *People v. Martin* (1970), 47 Ill. 2d 331, 339, 265 N.E.2d 685, *cert. denied* (1971), 403 U.S. 921, 29 L. Ed. 2d 700, 91 S. Ct. 2240.) It is the reason for the disparity that is controlling. *People v. Martin.*

A disparity in sentences is appropriate where the defendant receiving the more severe sentence was the moving force in the commission of the crime. (See *People v. Martin* (1970), 47 Ill. 2d 331.) Both Massarella and Battersby were convicted of perjury for their testimony in the injunction suit initiated by BJTS of which Massarella was president and the sole shareholder. Massarella testified without subpoena and his testimony extended over four days and consumed nearly one-half of the entire hearing. On the other hand, Battersby testified only briefly after being subpoenaed by Massarella's attorney. Thus, we conclude that Massarella was the moving force in the commission of the crimes of perjury.

██ Moreover, it is proper for a trial court to grant leniency in sentencing a defendant who by his plea ensured prompt and certain application of correctional measures to him, acknowledged his guilt and showed a willingness to assume responsibility for his conduct, and cooperated in the successful prosecution of other offenders. (See A.B.A. Project on Minimum Standards for Criminal Justice, Standards Relating to Pleas of Guilty §§1.8(a)(i), (ii), (v) (1968); *cf. People v. Sivels* (1975), 60 Ill. 2d 102, 105, 324 N.E.2d 422.) A review of the record shows that Battersby satisfied these criteria, and, therefore was properly afforded a more lenient sentence.

Finally, defendant's reliance on *People v. Moriarty* (1962), 25 Ill. 2d

565, 185 N.E.2d 688, is misplaced. In *Moriarty*, the court held that a criminal defendant should not be punished by a heavy sentence merely because he exercised his constitutional right to a trial. With this holding we agree. However, there the trial judge in imposing a heavier sentence expressly stated that he intended to punish the defendant's insistence on a trial. In the instant case, no such prejudice was claimed by Massarella, and the trial court imposed the minimum penitentiary sentence for perjury after careful consideration of the defendant's background. We are of the opinion that the trial court's action was proper.

### XIII.

For the crime of theft BJTS was fined \$10,000 and ordered to pay \$425,407 in restitution less the \$100,000 paid by Battersby and Mid-Town Petroleum, Inc. For the crime of conspiracy to commit theft, Mideast received the same sentence. The corporate defendants and Massarella were held jointly and severally liable for the payment of restitution.

■ A corporation may be ordered to pay restitution in addition to a fine only as a condition of conditional discharge. (See Ill. Rev. Stat. 1973, ch. 38, pars. 2-15, 1005—5—3(f)(1), 1005—6—3(b)(10), and 1005—9—1(b).) At the outset we note that section 5—5—3(a) provides that "[e]very person convicted of an offense shall be sentenced as provided in this Section." (Ill. Rev. Stat. 1973, ch. 38, par. 1005—5—3(a).) However, the UCC contains no definition of the word "person." The Unified Code of Corrections is a part of chapter 38 of our statute and is identified as "Criminal Law and Procedure." Section 2—15 of chapter 38 contains the following definition of the word "person":

> " 'Person' means an indiviudual, public or private corporation, government, partnership, or unincorporated association." (Ill. Rev. Stat. 1973, ch. 38, par. 2—15.)

It is obvious to us that the legislature in using the word "person" in the Unified Code of Corrections was mindful of the definition in section 2—15 and considered that in using the word "person" in the Unified Code of Corrections.[6] In any respect the defendant has not raised this point on appeal.

In the instant case the trial court did not sentence either corporation to a period of conditional discharge. Therefore, the restitution order was imposed in a manner which did not conform to the statute. Accordingly, the sentences of BJTS and Mideast are hereby vacated and the cause

---

[6] See also the statutory provision for construction of statutes (Ill. Rev. Stat. 1973, ch. 131, par. 1.05), which states:

> " 'Person' or 'persons' as well as all words referring to or importing persons, may extend and be applied to bodies politic and corporate as well as individuals."

remanded to the trial court for resentencing as to these corporate defendants.

For the reasons set forth herein, the judgment of the circuit court of Cook County is affirmed in part and reversed and remanded in part.

Affirmed in part; reversed and remanded in part.

STAMOS, P. J., and PERLIN, J., concur.